[No. E048027. Fourth Dist., Div. Two. June 23, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JAIME LOPEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts 2., 4. and 5.

1222

COUNSEL

R. Clayton Seaman, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Christine Bergman, Kristen Kinnaird Chenelia and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**HOLLENHORST, J.**—Defendant Jaime Lopez challenges his convictions for molesting his two stepdaughters, N.E. and C.H. Defendant appeals judgment entered following jury convictions for two counts of the lesser included offense of misdemeanor battery (Pen. Code, § 242;[1] counts 1 and 2) and three counts of committing a lewd act upon a child under the age of 14 (§ 288, subd. (a);[2] counts 3, 4, and 5). The jury also found true the multiple victims enhancement as to counts 3 through 5. (§ 667.61, subds. (b), (c) & (e).)

Defendant contends the trial court erred in permitting the prosecutor to amend the information to add count 4. Defendant asserts that adding the new count was improper because there was no evidence presented at the preliminary examination supporting the additional offense. Defendant also contends the trial court erred in denying his motion for acquittal as to counts 3 and 4; erred in failing to instruct the jury on the requisite concurrence of act and intent in counts 3 and 4; and erred in precluding cross-examination of N.E. regarding her pregnancy and suicide attempt. As to these contentions, we conclude there was no reversible error and affirm the judgment.

Defendant further argues, and the People agree, the court erred in not giving defendant proper credit for pretrial custody served. The trial court erroneously subtracted 360 days of custody credit, rather than 180 days, for counts 1 and 2, and failed to award defendant 97 days of worktime credit. Defendant was in continuous custody until his sentencing for 647 days. Accordingly, the trial court is directed to modify the judgment to reflect that defendant is entitled to 564 days of credit (744 days (647 + 97) − 180 days), rather than 324 days credit erroneously awarded by the court. The judgment is affirmed in all other respects.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] Section 288, subdivision (a), in effect at the time of the commission of the charged offenses, is referred to herein as section 288(a).

## 1. Facts

Defendant and M.L. married in 1999. Defendant had two daughters of his own, B.L., and a younger daughter, A.L. (born in 1990). M.L. also had two of her own daughters, C.H. (born in 1990) and N.E. (born in 1992). In 2001, a Wal-Mart employee notified the police that defendant had dropped off film at Wal-Mart to be developed. The film contained inappropriate photographs of naked girls in the shower, and photos of girls blindfolded, wearing lingerie.

Police Officer Mouwerik investigated the photographs. He took blowups of the photos to local elementary schools and determined that C.H. and N.E. were the girls in the photographs. Officer Mouwerik then went to defendant's apartment. Defendant and M.L. were not home. C.H. told Officer Mouwerik defendant had taken the pictures. When Officer Mouwerik returned 45 minutes later, B.L. was there with C.H. and N.E. B.L. told Officer Mouwerik she had taken the pictures.

When Officer Mouwerik returned a third time that same day, M.L. was home with C.H. and N.E. Officer Mouwerik showed M.L. the photos. Two were of N.E. and C.H. together, naked in the shower. Two additional photos were of C.H. wearing a lingerie top. M.L. said the lingerie top was M.L.'s and she gave it to Officer Mouwerik. M.L. also said defendant had called there sometime between Officer Mouwerik's three visits to the apartment.

Officer Mouwerik then spoke to C.H. She again told him B.L. had taken the photos but, when questioned further, said defendant had taken the photos. C.H. said that when defendant took the photo of her in which she was blindfolded, she and N.E. were playing a game in which they searched for coins blindfolded. They called this "the money game."

Officer Mouwerik also spoke to N.E. during the third visit. She initially said that B.L. took the shower pictures but later told Officer Mouwerik defendant told her to say B.L. took the pictures. She said she wanted to protect defendant and began to cry. She did not want defendant to go to jail. N.E. conceded defendant took the photos.

Four days later, on June 12, 2001, Officer Mouwerik spoke to defendant. When asked why he took the picture of C.H. wearing lingerie, defendant responded that "he was still trying to figure that one out." When asked about the photos of C.H. and N.E. naked in the shower, defendant said it was "horseplay."

A Child Protective Services (CPS) worker interviewed the girls. The CPS worker and Officer Mouwerik asked the girls if they had ever been touched inappropriately. The girls said they had not. Defendant was not arrested or charged with any crime at that time.

Six years later, in June 2007, N.E. and defendant got into a loud argument over N.E.'s clothing. N.E. wanted to wear swim-short bottoms under her skirt for her physical education (PE) class. Defendant told her he did not want her wearing such skimpy clothing and took away N.E.'s swimsuit. Defendant yelled at N.E. and kicked her in the leg. N.E. was upset and crying when defendant dropped her off at school. N.E. told her school counselor defendant had kicked her and also that defendant had been molesting her.

At trial, N.E. testified that defendant first touched her when she was around nine years old and had the chicken pox. After N.E. put lotion on to control the itching, she fell asleep on the living room couch naked, with a blanket covering her. N.E. awoke to defendant putting his hand under the blanket, touching her breasts and vaginal area. Defendant was simultaneously rubbing his penis. This incident is the basis of count 1.

N.E. told police Detective Deutscher, who was assigned to investigate the molestation, that on two occasions, at the time of the chicken pox incident, defendant had touched her vaginal area while N.E. was sleeping on the couch. N.E. testified defendant had done this at least five times when she was between 10 and 14 years old. Defendant persuaded N.E. not to tell anyone. When she was 11 or 12 years old, defendant told her "You don't want your dad to go to jail right?"[3] These allegations are the basis of count 2.

About the same time defendant was molesting N.E., he was also inappropriately touching C.H. at night. C.H. testified that on one occasion, defendant rubbed her body over her clothing, from her leg up to her arm. He also rubbed her breast. She was lying in the bottom bunk bed in her room. Her sisters were sleeping in the other bunk beds. It happened in 2001, when C.H. was about 11 years old. A.L. testified that she saw defendant enter the girls' bedroom, kneel down next to C.H.'s bunk bed, lift up C.H.'s shorts, and rub her bottom as he masturbated. On another occasion, when C.H. fell asleep on the living room floor, with defendant sitting next to her, she discovered upon awaking that her underwear was missing. Defendant told her she peed on herself. Count 5 is based on these allegations.

---

[3] C.H. and N.E. called defendant, "Dad."

N.E. and C.H. further testified that defendant took pictures of them in the shower, beginning when N.E. was about 10 years old and C.H. was 11 years old. N.E. and C.H. noticed that there were video cameras hidden in the house, including in the girls' bathroom and bedroom. The bathroom camera was pointed toward the shower.

N.E. and C.H. testified that defendant played "the money game" with them. He directed them to dress in lingerie or bathing suits, and look for money blindfolded. They played this several times. Counts 3 and 4 are based on the money game allegations.

Defendant also would direct them to put on their mother's lingerie and would take pictures of them posing. This continued until shortly before N.E. reported defendant's abuse to the police in 2007. When officers searched defendant's apartment, they found film and photos inside a comic book in the master bedroom. There were photos of C.H.'s and N.E.'s vaginal areas. They also found a red negligee and skirt N.E. was wearing in the photos.

After defendant was arrested and CPS removed the girls from M.L. and defendant's custody, defendant sent N.E. letters that she said made her feel bad about what had happened to defendant. N.E. attempted to recant some of her allegations.

Dr. Jody Ward, a clinical and forensic psychologist, testified as an expert on child sexual abuse accommodation syndrome.

Defense investigator, Victor Paul, testified that about a month after N.E. reported the molestation in June 2007, he interviewed N.E. She told him defendant would not let her visit her boyfriend because he was 18 years old. N.E. told Paul that what she had told the police was incorrect. The incidents she claimed happened in 2007 did not occur. She said she wanted to clear up the inaccuracies in her original report and claimed she had lied because she was upset with defendant.

Defendant's brother, A.M., testified that after defendant's arrest, he had spoken to the girls about their allegations. N.E. told him defendant was strict with her and did not let her see her boyfriend. She also told him she had made up the abuse allegations because she was upset with defendant.

## 2. Information Amendment[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*]See footnote, *ante*, page 1220.

### 3. Motion to Dismiss Counts 3 and 4

Defendant contends the trial court erred in denying his section 1118.1 motion to dismiss counts 3 and 4 of the second amended information. Count 3 charged defendant with committing a lewd act upon N.E., a child under the age of 14, between January 10, 2001, and January 10, 2003 (§ 288(a)). Count 4 charged defendant with committing the same crime against C.H., between January 1, 2001, and June 2, 2003. Both counts were based on defendant's playing the money game with the girls. Defendant argues the court should have acquitted him of counts 3 and 4 because there was no evidence of concurrence between the prohibited act and lewd intent.

### A. *Procedural Background and Applicable Law*

Following the close of evidence, defendant moved to dismiss counts 3 and 4[4] pursuant to section 1118.1, on the ground there was insufficient evidence of concurrence of a "touching" act and lewd intent. During the hearing on the motion for acquittal, defense counsel also argued there was no requisite touching since counts 3 and 4 were based on the theory that defendant directed N.E. and C.H. to put certain clothes on. In response, the prosecutor argued there was a touching under *People v. Austin* (1980) 111 Cal.App.3d 110 [168 Cal.Rptr. 401] (*Austin*), in which the defendant directed the victim to remove her pants. Defense counsel argued *Austin* was distinguishable because the defendant in *Austin* was watching the victim change her clothes whereas, in the instant case, there was no evidence defendant watched the girls change their clothes. Without elaborating, the trial court denied defendant's motion for acquittal.

On a motion by defendant under section 1118.1, a trial court must "order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal." (§ 1118.1.) "The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case." (*People v. Shirley* (1982) 31 Cal.3d 18, 70 [181 Cal.Rptr. 243, 723 P.2d 1354].)

The prosecution has the burden of proving every element of a crime beyond a reasonable doubt. (*People v. Cuevas* (1995) 12 Cal.4th 252, 260 [48 Cal.Rptr.2d 135, 906 P.2d 1290].) "To determine whether the prosecution has introduced sufficient evidence to meet this burden, courts apply the 'substantial evidence' test." (*Ibid.*, quoting *People v. Johnson* (1980) 26 Cal.3d 557,

---

[4] Defense counsel erroneously refers to count 4 as count 5.

578 [162 Cal.Rptr. 431, 606 P.2d 738].) "The substantial evidence test applies both when an appellate court is reviewing on appeal the sufficiency of the evidence to support a conviction and when a trial court is deciding the same issue in the context of a motion for acquittal under Penal Code section 1118.1 at the close of evidence." (*People v. Cuevas, supra,* at p. 261.)

■ Here, defendant was charged in counts 3 and 4 with committing a lewd act upon a child under the age of 14, in violation of section 288(a). Former section 288(a), in effect at the time of the commission of the offenses, provided that one is guilty of a section 288(a) offense when one "willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ." Crimes included in former "Part 1" included rape (§ 261) and sexual assault of a child (§ 289).

A violation of section 288(a) requires " 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People v. Martinez* (1995) 11 Cal.4th 434, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*).) "[T]he circumstances of the touching remain highly relevant to a section 288 violation. The trier of fact must find a union of act and sexual intent . . . and such intent must be inferred from all the circumstances beyond a reasonable doubt. A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute." (*Ibid.*)

■ Courts have held that a defendant need not touch the victim in order to violate section 288. In *Austin, supra,* 111 Cal.App.3d at pages 114–115, the court held that a defendant who, without touching the child, compelled the child to remove her own clothing was guilty of violating section 288. Violation of section 288 requires the defendant to either touch the body of a child or willfully cause a child to touch her own body, the defendant's body, or the body of someone else. (*Austin, supra,* at pp. 114–115.)

In *People v. Mickle* (1991) 54 Cal.3d 140, 176 [284 Cal.Rptr. 511, 814 P.2d 290] (*Mickle*), in which the California Supreme Court approved the holding in *Austin, supra,* 111 Cal.App.3d at pages 114–115, the court stated: "Defendant does not suggest that the actual or constructive disrobing of a child by the accused cannot constitute a lewd act as a matter of law. Where committed for a sexually exploitative purpose, such conduct is presumptively harmful and prohibited by section 288(a)." (*Mickle, supra,* at p. 176.) A

nonforcible lewd and lascivious act, which requires the intent to arouse, appeal to or gratify the defendant or the minor victim sexually (*In re Paul C.* (1990) 221 Cal.App.3d 43, 54 [270 Cal.Rptr. 369]), is harmful and offensive because of the "special protection" the law provides for children from sexual exploitation. (See *Martinez, supra,* 11 Cal.4th at p. 443; *Austin, supra,* at pp. 114, 115.)

B. *Discussion*

Defendant argues there was insufficient evidence of the count 3 and 4 offenses because defendant did not touch the girls, he was not present when they changed their clothes, and there was no evidence he harbored any lewd intent when the girls touched themselves while changing their clothes. Defendant notes there was no evidence as to how long the girls took to change their clothes after defendant asked them to do so. Defendant asserts that, although he may have experienced sexual gratification when he observed the girls search for money during the money game, there was no evidence he experienced sexual gratification while the girls were changing their clothes. Thus, the requisite concurrence of act and intent is lacking.

The People construe the touching element broadly to encompass a constructive touching, which occurs out of the presence of defendant. The People argue the requisite concurrence of the touching and lewd intent occurred over the course of defendant directing the girls to change their clothes, the girls putting on the provocative clothing he provided, and defendant then watching and taking photos of the blindfolded girls searching for money.

Defendant argues that it is not sufficient for defendant's lewd intent to occur in some proximity to the touching act. The act and lewd intent must occur simultaneously. Defendant rejects the constructive touching doctrine and further asserts that, even if it is a valid principle, it is not controlling in the instant case because it was not concurrent with a lewd intent. Defendant claims the prosecution's theory based on defendant directing the girls to change into provocative clothing essentially criminalizes thoughts instead of actions.

We conclude that, under the totality of the circumstances, the evidence supported a reasonable finding that there was a touching concurrent with lewd intent, in violation of section 288(a). The evidence established that the touching occurred when, at defendant's direction, the girls removed their clothing and dressed in clothing defendant told them to wear. (*Austin, supra,* 111 Cal.App.3d at pp. 114, 115.) This act of changing clothing was sexually motivated by defendant's lascivious desire to observe and take pictures of the girls in provocative clothing while they played the money game.

We recognize that it is undisputed defendant did not touch the girls when they removed their clothing and dressed in the provocative clothing. But under *Austin, supra*, 111 Cal.App.3d 110, the court held that a "touching" under section 288 need not be committed directly by the defendant. In *Austin*, the court held that a defendant who, without touching the child, compelled the child to remove her own clothing was guilty of violating section 288. (*Austin, supra*, at p. 115; see also *People v. Meacham* (1984) 152 Cal.App.3d 142, 153–154 [199 Cal.Rptr. 586].)

Defendant acknowledges this principle but argues it is inapplicable in the instant case because defendant was not present when the girls changed their clothing and thus did not observe the girls touching themselves as they changed. There thus was no concurrence of the act and defendant's lewd intent. There does not appear to be any case law addressing the issue of whether a touching out of the presence of the defendant can satisfy the touching element within the meaning of section 288. This is thus an issue of first impression.

In addressing this issue, we look to our high court's discussion of section 288 in *Martinez, supra*, 11 Cal.4th 434, in which the defendant was convicted of committing a lewd act with force when he grabbed a young girl, hugged her, and touched her chest area. (*Id.* at p. 441.) In discussing the meaning of a "lewd" act within the meaning of section 288, the court in *Martinez* stated: "[A] 'lewd or lascivious act' is defined expansively to include contact 'upon or with the [victim's] body, or any part or member thereof.' (§ 288, subd. (a).) Nothing in this language restricts the manner in which such contact can occur or requires that specific or intimate body parts be touched. Rather, a touching of 'any part' of the victim's body is specifically prohibited." (*Martinez, supra*, at p. 442.) This definition would encompass any touching committed while a victim disrobed or changed his or her clothes.

The court in *Martinez, supra*, 11 Cal.4th 434 explained that the touching element is extremely broad. Section 288 is unlike other felony sex statutes which describe the criminal act in precise and clinical terms. (*Martinez, supra*, at p. 443.) The *Martinez* court concluded that it must be assumed that "the absence of similar language in section 288 was deliberate, and that the statute was intended to include sexually motivated conduct not made criminal elsewhere in the scheme." (*Ibid.*)

The purpose of section 288 is to protect children from being sexually exploited: "The Legislature's decision to cast a prohibited lewd act in such general terms is consistent with the basic purpose of the statute as long described by the courts. As we have explained, section 288 was enacted to provide children with 'special protection' from sexual exploitation. [Citation.]

The statute recognizes that children are 'uniquely susceptible' to such abuse as a result of their dependence upon adults, smaller size, and relative naiveté. [Citation.] The statute also assumes that young victims suffer profound harm whenever they are perceived and used as objects of sexual desire. [Citation.] It seems clear that such concerns cannot be satisfied unless the kinds of sexual misconduct that result in criminal liability are greatly expanded where children are concerned." (*Martinez, supra,* 11 Cal.4th at pp. 443–444.)

 Based on this legislative intent, "the courts have long indicated that section 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, *although it may have the outward appearance of innocence,* is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation]." (*Martinez, supra,* 11 Cal.4th at p. 444.)

 In the instant case, there is overwhelming evidence that defendant was sexually exploiting N.E. and C.H. when he directed them to dress in provocative clothing and then play the money game. The question here is whether there was sufficient evidence of a touching concurrent with lewd intent, where the girls dressed themselves out of defendant's presence, but under defendant's direction, for the sexually motivated purpose of playing the money game. As noted by our high court in *Martinez, supra,* 11 Cal.4th at page 444, "throughout the statute's history, the cases have made clear that a 'touching' of the victim is required, and that sexual gratification must be presently intended at the time such 'touching' occurs. [Citations.] However, the form, manner, or nature of the offending act is not otherwise restricted. Conviction under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body. [Citations.]"

The *Martinez* court further clarified that "*any* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal." (*Martinez, supra,* 11 Cal.4th at p. 445.) The court added, "the touching of an underage child is 'lewd or lascivious' and 'lewdly' performed depending entirely upon the sexual motivation and intent with which it is committed." (*Id.* at p. 449.) And "the only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances."

(*Id.* at p. 450.) Such circumstances to be considered by the fact finder, include "the relationship of the parties, the nature of the touching, and the presence or absence of any nonsexual purpose under section 288." (*Id.* at p. 450, fn. 16.)

Under *Martinez* and *Austin*, section 288 is violated by "any touching" of an underage child, including a constructive touching by the victim at the defendant's direction, "accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*Martinez, supra,* 11 Cal.4th at p. 452.)

■ Because of the apparent legislative intent to apply section 288 expansively to any sexually motivated touching, including touchings by the victim at the defendant's direction, we conclude section 288 encompasses defendant's act in the instant case of directing the victims to change into provocative clothing for the sexually motivated purpose of watching the girls search for money in the provocative clothing. Defendant committed the touching acts constructively, through the victims as conduits, for the purpose of sexual arousal. Even though defendant may not have experienced sexual arousal at the moment the victims touched themselves when putting on the provocative clothing, defendant's intent when instigating or causing the touchings was lewd and lascivious within the meaning of section 288, since the touchings were sexually motivated and committed for the purpose of defendant's sexual gratification.

Furthermore, the touching, consisting of the girls changing into provocative clothing, was not, as defendant argues, merely incidental to the lewd and lascivious money game. It was an integral part of defendant's lewd scheme of experiencing sexual arousal from watching the girls searching for money blindfolded while scantily clad in bras and other underwear or bathing suits. A jury could reasonably find the acts of the girls putting on provocative clothing at defendant's direction constituted touchings within the meaning of section 288(a), which defendant directed with lewd intent, in furtherance of a sexually motivated scheme, and for the purpose of exploiting the girls sexually, in violation of section 288(a).

4., 5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1220.

## 6. Disposition

The judgment is hereby modified so as to award defendant 647 actual days of custody credit, plus 97 days of worktime credit, minus 180 days of custody for count 1 misdemeanor battery (§ 242), for a *total of 564 days of credit*, rather than 324 days. The trial court is directed to amend the abstract of judgment so as to reflect the modifications and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. (§§ 1213, 1216.) In all other respects, the judgment is affirmed.

Ramirez, P. J., and King, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 29, 2010, S184774.