MANION, Circuit Judge,
concurring.
The court has presented a thorough comparative analysis of federal law and precedent to conclude that “sexual activity” and “sexual act” mean the same thing — under either label, any such act that does not involve physical contact between two people is excluded. I would not go so far and equate the term “sexual activity” with “sexual act.” Sexual activity is a broader term that includes things sexual that do not involve the actual physical encounter.
I do, however, agree that there are serious problems with this case: I do not believe that Jeffrey P. Taylor could be successfully prosecuted for either of the Indiana crimes that the government alleged he committed, and for that reason, I respectfully concur with the court’s judgment.
Under § 2422(b), the government must establish that Taylor “induced” a minor “to engage in ... any sexual activity for which any person can be charged with a criminal offense.” 18 U.S.C. § 2422(b). The government alleged that Taylor could be charged with fondling in the presence of a minor and solicitation. Ind.Code § 35-42-4 — 5(c)(3) (“fondling”); Id. § 34-42-4-6 (“solicitation”). The fondling statute provides, in relevant part, that it is a crime when an adult “touches or fondles the person’s own body; in the presence of a child less than fourteen years of age with the intent to arouse or satisfy the sexual desires” of either the child or adult. Ind. Code 35-42-4-5(c). At trial, Taylor’s defense was that he thought the person “elliegirll234” with whom he was having these online conversations was an adult, and the idea that he was engaging with minor was a fantasy. He did not argue that using a webcam did not place him in the presence of a minor, and thus he could *261 not be convicted under § 35-42-4-5(c). Although Taylor failed to argue that his actions did not violate Indiana law, I would still address the argument on plain-error review.
The Indiana statute does not qualify the term “presence” with words like “actual” or “constructive”; it simply states the adult must fondle himself “in the presence of’ a minor. And Indiana has not defined the term presence in the statute. Black’s, however, defines presence as:
1. The state or fact of being in a particular place and time <his presence at the scene saved two lives >. 2. Close physical proximity coupled with awareness <the agent was in the presence of the principal >.
Black’s Law Dictionary 1302 (9th ed.2009). The Oxford English Dictionary provides much the same definition: “The place or space in front of or around a person; the immediate vicinity of a person.” 12 Oxford English Dictionary 392-93 (2d ed.1989). Both definitions are spatial; they refer to a person being in a particular place with another individual. As a term in legal usage, “presence” comes up most often in the crime of robbery. In that context, a perpetrator must steal something from the other person’s presence. Ind.Code § 35 — 42—5—1 (defining robbery as the taking of “property from another person or from the presence of another person”). Meaning: The property must be taken when the person and the robber are in the same physical place — presence cannot be divorced from physical proximity. Coates v. State, 534 N.E.2d 1087, 1096 (Ind.1989). Not surprisingly, the concept of physical proximity has arisen in cases under the Indiana fondling statute at issue here. One Indiana court has stressed that the element of presence does not mean the minor has to know about the fondling; all it requires is that the child “be at the place where the defendant’s conduct occurs.” Baumgartner v. State, 891 N.E.2d 1131, 1138 (Ind.App.Ct.2008) (emphasis added). In the dictionary and as illustrated in the robbery context and Baumgartner, presence is defined by physical proximity.
Although Indiana courts have not addressed whether the element of “presence” is satisfied by something other than actual physical presence, other courts have.[1] Georgia has a statute that is worded similarly to the Indiana statute; it requires that the adult be “in the presence of’ the child. Ga.Code § 16-6-4(a)(l). And Georgia courts have held that conversations over phones and webcams do not put the adult in the presence of the child.[2] Likewise, the Court of Appeals for the Armed Forces has held that neither a phone call nor a webcam constitutes being in the presence of another person.[3]
*262 As a matter of common sense, most would agree with those courts: electronic communications do not place one person in another’s presence. When Taylor and “elliegirll234” communicated over Instant Messenger they were not in one another’s presence. The same would be said if they had that conversation over the phone. The fact that a webcam is used does not change the analysis. Taylor’s visual image on the computer doesn’t make him anymore physically present than his voice does — -it just enhances the effect. See Selfe, 660 S.E.2d at 730 (noting “[bjecause both telephone and computer communications are by electronic transmissions, we are unable to distinguish the two modes as it relates to the necessity of ‘presence’ ”). And there is no reason to unsettle or expand the accepted definition of “presence” to fit conversations over webcams when it wouldn’t fit a conversation over the phone.
That’s not to say there isn’t a strong argument to be made that webcams and other similar technologies put two people in the constructive presence of one another.[4] Many, many courts have held this.[5] But in those cases, the courts have interpreted statutes that did not concern “presence”; instead some other term is used, usually the word “with.”[6] In those states, presence is not an element of the offense; the prosecution only has to prove that the adult’s actions would impair the health and morals of the child.[7] Indiana’s legislature has, however, made “presence” an element of the offense. It has not qualified the term with “actual or constructive,” and if the term “presence” is expanded to include constructive and actual presence, that development should not come from the courts, especially the federal courts.
In sum, for Taylor to be convicted of fondling under § 35-42-4-5, the government had to prove that he was in the presence of a child. Since a webcam did not place him in the presence of “elliegirll234,” Taylor could not have been convicted of that offense.
*263 The next issue is whether Taylor could have been convicted under Indiana law for solicitation. While masturbating over the webcam, Taylor also had a conversation with “elliegirll234” over Instant Messenger, in which he told her to touch and caress her vagina. It was also during this typed conversation that “elliegirll234” twice asked whether she and Taylor would meet, and twice Taylor told her that they could not — in his words, their relationship would remain a “fantasy.”
Here, Taylor did not want to meet and have sex with “elliegirll234,” nor did he seek to meet “elliegirll234” so he could fondle her. The only fondling that Taylor solicited was for “elliegirll234” to touch herself, apart from him. That takes the case out of the typical solicitation scenario where an adult solicits a minor to meet and engage in sexual conduct, Laughner v. State, 769 N.E.2d 1147, 1156 (Ind.Ct.App.2002); Kuypers v. State, 878 N.E.2d 896, 898-99 (Ind.Ct.App.2008), and makes Taylor’s case unusual.
Under Indiana law, a person is guilty of soliciting a minor if the person “solicits” the child “to engage in (1) sexual intercourse; (2) deviate sexual conduct; or (3) any fondling or touching intended to arouse or satisfy the sexual desires of either the child or the older person.” Ind. Code § 35-42-4-6. There are two ways to read the statute: does the solicitation have to be for “fondling” or “touching” with the other person, or does simply instructing a person to do so apart from the adult qualify. The first way would proscribe any solicitation of a child to fondle herself, even if it is at a location and time apart from the adult. So, under that reading, a salacious letter that directed the minor to masturbate would be a crime. The other construction would mean that the solicitation would have to be for fondling with the adult. These legitimate and competing readings render the final element ambiguous.
As a matter of statutory construction, when we have terms that are open to competing definitions, we usually define them in reference to the terms they appear with. As the Supreme Court has cautioned, the rule that “a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings to avoid the giving of unintended breadth of the [legislature].” National Muffler Dealers Ass’n, Inc. v. United States, 440 U.S. 472, 486 n. 20, 99 S.Ct. 1304, 59 L.Ed.2d 519 (1979) (quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961)). A related rule of construction dictates that when specific words of limited meaning and application are followed by words of a more general meaning, “the general words are to be construed as including only those things that are like those designated by the specific words.” Salter v. State, 906 N.E.2d 212, 220 (Ind.Ct.App.2009).
Here, the statute proscribes soliciting a child to engage in sex, deviate sex, and fondling. When someone solicits sex and presumably deviate sex, it requires another person — those acts cannot be done alone. Generally, when someone solicits a child for sex it means that the adult is soliciting the child to have sex with him, not that the adult is encouraging the child to have sex apart from the person doing the soliciting, or have sex as a general matter. If we read the terms fondling and touching in the same manner as sex and deviate sex, only fondling and touching that is done with the other person would be included, and not simply touching that occurs at a person’s request but apart from the other person. This would confine the statute to the typical scenario where the adult seeks to meet the child to have *264 sex with or to fondle her. And it would not reach the situation of the salacious letter. Indeed, adopting this sensible way of reading the statute keeps us from giving it unintended breadth. National Muffler Dealers Ass’n, Inc., 440 U.S. at 486, 99 S.Ct. 1304. Additionally, this reading is reinforced by the rule of lenity, which instructs that “ambiguity in the meaning of a statutory provision should be resolved in favor of the defendant.” United States v. Turcotte, 405 F.3d 515, 535 (7th Cir.2005). If the Indiana legislature wants to expand the definition to include Taylor’s conduct, it can easily do so without the ambiguity. And if the Indiana courts face a similar case and interpret the statute expansively, then it would be binding on us. But since there is no similar Indiana case on this issue, I do not believe the statute covers Taylor’s conduct.
Of course, the government is not obliged to wait for Indiana to have a case on point before it can charge Taylor with a crime under § 2422, but when Congress chooses to define a crime by state law, federal prosecutors cannot exceed the scope of the state law and seek to punish conduct that is not illegal under the statutes listed in the indictment — even though the conduct is extremely disturbing. Here, the prosecutor was free to charge Taylor with many other crimes; in addition to the offenses pointed out by the court’s opinion, the prosecutor could have charged Taylor with at least two federal offenses. 18 U.S.C. § 1470 (attempting to transfer obscene matter to a minor); 47 U.S.C. § 223(d)(1) (sending obscene images to a minor).
It bears noting one final reason for giving the solicitation statute a limited reading. When this statute was passed in 1984, Taylor’s conduct was unimaginable. While law constantly trails crime, in the context of sexual behavior and technology the problem is particularly clear — the old laws will not do. The legislature has to specifically address this lamentable behavior and determine what the law truly proscribes. Under our current laws, with the advent and prevalence of “sexting” and virtual sexual behavior, many, many citizens are engaging in behavior that could make them felons. See Jordan J. Szymialis, Sexting: A Response To Prosecuting Those Growing Up with a Growing Trend, 44 Ind. L.Rev. 301 (2010) (a thorough article surveying the problem and offering suggestions for the legislature).[8] It is not enough to let the courts figure it out and to try to see if old definitions fit this new and troubling behavior.
In sum, although Taylor’s conduct was inappropriate and extremely troubling, I do not believe it would constitute a crime under either of the Indiana statutes listed in the indictment. For that reason, I concur with the court’s judgment.

. Concerning this statute, the only case discussing whether a webcam puts the adult in the minor's presence is a federal district court case where the defendant conceded that he was in the presence of the minor. United State v. Cochran, 510 F.Supp.2d 470 (N.D.Ind.2007). And on appeal we specifically noted that Cochran’s argument did not concern whether he violated Indiana law. United States v. Cochran, 534 F.3d 631, 635 n. 3 (7th Cir.2008). So, Cochran is of no precedential or persuasive value.

. Vines v. State, 269 Ga. 438, 499 S.E.2d 630, 632 (1998) (telephone); Selfe v. State, 290 Ga.App. 857, 660 S.E.2d 727 (2008) (web-cam).

. United States v. Knowles, 15 U.S.C.M.A. 404, 405, 35 C.M.R. 376 (C.M.A.1965) (telephone); United States v. Miller, 67 M.J. 87, 89 (Army Ct.Crim.App.2008) (webcam). After the Knowles case the military code was amended, and presence was clarified to only include physical presence. A thorough review of this development of the law on the issue of presence and technology is presented in Maj. Patrick D. Pflaum, Shocking and Embarrassing Displays On-Line: Recent Developments in *262 Military Crimes Involving Indecent Conduct Via Webcam, Army Lawyer (March 2010). •

. E.g., State v. McClees, 108 N.C.App. 648, 424 S.E.2d 687, 689 (1993) ("Through the forces of modem electronic technology, namely the video camcorder, one can constructively place himself in the 'presence' of another.”); State v. Whitmore, 58 So.3d 583, 590 (La.App.Ct.2010); State v. Every, 157 N.C.App. 200, 578 S.E.2d 642, 649 (2003) (finding that use of a telephone, "albeit arguably less than modern, renders defendant constructively present under these circumstances.” (emphasis added)).

. E.g., Brooker v. Commonwealth, 41 Va.App. 609, 587 S.E.2d 732, 735-36 (2003) (web-cam); McClees, 424 S.E.2d at 689 (refusing "to hold that the words ‘with any child' ” require a defendant to be "within a certain distance of, or in close proximity to the child”); see also United States v. Izaguirre-Flores, 405 F.3d 270, 275 (5th Cir.2005) (noting that for purpose of the sentencing guidelines "[gjratifying or arousing one's sexual desires in the actual or constructive presence of a child is sexual abuse of a minor”); Rabuck v. State, 129 P.3d 861, 867 (Wyo.2006) (finding a video camera constitutes constructive presence); People v. Lopez, 185 Cal. App.4th 1220, 111 Cal.Rptr.3d 232, 238-39 (2010) (finding a video camera constitutes constructive touching).

. E.g., N.C. Stat. § 14-202.1 (criminalizing taking "any immoral, improper, or indecent liberties with any child ” (emphasis added)); Va.Code 18.2 § 18.2-370 (punishing indecent exposure when done “with any child " (emphasis added)); Wyo. Stat. § 14-3-105(a) (providing, in pertinent part, “any person knowingly taking immodest, immoral or indecent liberties with any child ... is guilty of a felony.” (emphasis added)).

. Conn. Gen.Stat. § 53-21(a)(l); State v. Elliott, 127 Conn.App. 464, 14 A.3d 439, 445-46 (2011) (finding that masturbating over a web-cam so a child can see would injure the child's morals).

. See also Terri Day, The New Digital Dating Behavior — Sexting, 33 Hastings Comm. & Ent. L.J. 69 (2010); Robin Fretwell Wilson, Sex Play in Virtual Worlds, 66 Wash. & Lee L.Rev. 1127 (2009) (outlining how pedophiles use virtual worlds to solicit children, and the rise of virtual sex); Federal Trade Commission Report to Congress, Virtual Worlds and Kids: Mapping the Risks, 2009 WL 4755418 (F.T.C.) (giving recommendations to Congress on how to combat the threat to children in virtual worlds).