Filed 7/30/15  P. v. Hernandez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JUAN HERNANDEZ,<br><br>　　　Defendant and Appellant. | B257952<br><br>(Los Angeles County<br>Super. Ct. No. KA103289) |


APPEAL from a judgment of the Superior Court of Los Angeles County, Robert M. Martinez, Judge.  Affirmed.

David M. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Juan Hernandez, raises contentions of instructional error following his conviction of continuous sexual abuse of a child and four counts of committing a lewd act on a child. For the reasons discussed below, the judgment is affirmed.

## BACKGROUND

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

The prosecution witnesses, all of whom were Hernandez's nieces, described a series of sexual assaults he perpetrated against them years earlier when they were children.

a. *Stephanie: continuous sexual abuse (count 2).*

Stephanie, who was 18 years old at the time of trial, testified that, as a child, she often visited defendant Hernandez's home. Hernandez was married to her mother's sister. Stephanie often played with Hernandez's daughter, who was a year older than Stephanie.

The first time that something happened was when Stephanie was in the first grade and she spent the night in Hernandez's living room. Stephanie woke up to find Hernandez touching her chest, her sides and her thighs. She could feel his hands rubbing her body up and down on the outside of her clothing. Hernandez told her "not to say anything or something will happen."

When Stephanie was about the same age, there was another incident in the living room of Hernandez's house. This time Hernandez rubbed Stephanie's chest, her side and her legs on the inside of her clothing: "The second time it happened it was about the same thing. He was just rubbing up my body, but I remember this time he went in my clothes." Hernandez also rubbed Stephanie's vagina from the outside of her clothes.

Stephanie described other incidents in which Hernandez inserted his fingers or his tongue into her vagina. She characterized the last incident that occurred as the worst one. On that occasion, she was sleeping in the daughter's room when Hernandez picked her up

and took her to his room. There, he laid her face-down on the bed, with her legs hanging over the side, and took off her clothes and his own clothes. Hernandez then pushed his naked "pelvis area" against Stephanie's bare buttocks. She could feel his penis, but she didn't know if it was hard, and she could not recall if she felt any pain or if he penetrated her.

At the time of these events, Stephanie did not tell anyone about it because she was afraid something bad would happen. When she was 12 years old, she told her sister A. that "sexual stuff" had happened with Hernandez.

### b. *K.: lewd act on a child (count 3).*

K. was also 18 years old at the time of trial. Hernandez was married to her father's sister.

When K. was ten years old and in the fifth grade, she was playing in Hernandez's house with his daughter and some other children. When the others decided to go to the store, Hernandez asked K. to stay behind. After the others left, Hernandez indicated he wanted K. to sit on his lap. When she did, Hernandez slipped his hand under her skirt and into her underwear, touching her buttocks. He also tried to kiss her. K. told Hernandez he wasn't supposed to be doing this and tried to shove him away. She fell off his lap and ran down the hall. When Hernandez called after her, "No one's going to believe you," K. felt "useless." She did not tell anyone about what happened because she thought no one would believe her.

While K. was still in the fifth grade, her sister Rosa told her that something similar had happened to her. K. told their mother, who left phone messages for Hernandez and his wife, but they never returned the calls. K.'s mother testified she never went to the police "[b]ecause of fear, because I'm alone in this country, because of ignorance."

### c. *Rosa: lewd act on a child (count 4).*

K.'s sister Rosa was 15 years old at the time of trial. She testified that on one occasion, when she was seven or eight, she was spending the night at Hernandez's house. She and his daughter were sleeping on a couch when Hernandez came in and picked Rosa up. The daughter awoke, asked Hernandez what he was doing, and Hernandez said he

3

was taking Rosa to another room because the couch was too small. Hernandez went into a bedroom and laid Rosa on a bed. He pulled her pants and underwear down to her thighs and rubbed her buttocks. Rosa kept pulling her pants back up and Hernandez kept pulling them back down. Hernandez heard someone coming and told Rosa to go back to his daughter's room.

The next day, Hernandez told Rosa he wanted to teach her how to ride a bike. As she sat on the bike with her feet on the ground, Hernandez slipped his hand in between the bicycle seat and Rosa's buttocks. Rosa was standing still astride the bike and Hernandez touched her buttocks over her clothes. Hernandez did not say anything; he just touched her and then removed his hand, after which Rosa rode off.

Soon afterward, Rosa told K. what happened and K. told their mother.

d. *A.: lewd acts on a child (counts 5 & 6).*

A., who was 25 years old at the time of trial, was Stephanie's sister. One time, when A. was 12 years old, she was sleeping at Hernandez's house when he came into the room and told her to scoot over. He then laid down next to her. He rubbed her breasts and her vagina from inside her clothing. A. did not move because she was too scared.

Another time, also when she was 12, A. was lying on the floor in her cousin's bedroom when she felt her shorts and underwear in her crotch area being moved to the side. A. felt someone licking her "down there" and then she felt a wet and "slimy substance on [her] vagina area." When she opened her eyes, she saw Hernandez's face between her legs. Hernandez scooted backwards and left the room.

e. *The police investigation.*

Los Angeles County Deputy Sheriff Alfonso Lopez interviewed Hernandez, who admitted having made "some mistakes" with a couple of his nieces.

Hernandez said the mistakes he made with A. included three incidents. Once he touched her on the "upper butt." Another time, he went into the bedroom, laid down next to her and became sexually aroused. However, he did not touch her because he was "afraid of crossing the line." On the third occasion, he pulled aside A.'s panties and looked at her vagina, but he did not touch her.

4

Hernandez said he also made mistakes with Stephanie. One time he picked her up and moved her into another room, where Stephanie took off her own panties and "wanted him to touch her, but [Hernandez] was too afraid to touch her." Because he was sexually aroused, he went into his own bedroom and masturbated. Another time, when Stephanie was asleep on the couch, Hernandez "asked her if he could touch her, and she said no. And he tried to touch her . . . but she moved her arms so he only touched her on her arms." On another occasion, Hernandez walked into a room and saw Stephanie kneeling on a couch. "She was not wearing any underwear or any pants, and he said that he approached her and she asked him to touch her, but he didn't touch her because he was too afraid."

Regarding K., Deputy Lopez testified that Hernandez described "an incident where he had placed [K.] on his lap . . . but he denied touching her on her private area. He continued touching her on her butt."

Asked if Hernandez had talked about having expressed sexual desires to Rosa, Lopez said yes: "[Hernandez] told me that he . . . told Rosie that he wanted to see her vagina, that he wanted to look at her vagina, and . . . he told me about an incident where he had picked up Rosie and taken her into the room, and he was asking her if he could see her vagina, and she got angry with him and told him 'no.' "

Lopez acknowledged that, during the interview, Hernandez also said: "This hand never touched a vagina, never touched a breast, nor my tongue touched anybody."

2. *Defense evidence.*

Hernandez's son testified that, when A. was in her early 20's, she lived with Hernandez and his family for about six months.

3. *Trial outcome.*

Hernandez was convicted of one count of continuous sexual abuse of a child for his conduct with Stephanie, and four counts of lewd act on a child (also referred to herein as "child molesting") for his conduct with Rosa, A. and K., with an enhancement for having committed a sexual offense against more than one victim (Pen. Code, §§ 288.5,

5

288, 667.61).[1]  He was sentenced to state prison for a term of 72 years to life.  This appeal followed.

## CONTENTIONS

Hernandez contends:  (1) the trial court erred by refusing to instruct the jury on attempted child molesting as a lesser included offense of the child molesting charges, and (2) the trial court erred by failing to instruct the jury on attempted child molesting in connection with the charge of continuous sexual abuse of a child.

## DISCUSSION

1. *Trial court did not err by failing to instruct on attempted child molesting as a lesser included offense for the crimes charged in counts 3 through 6.*

Hernandez contends his four child molesting convictions (§ 288, subd. (a)) (counts 3 through 6) must be reversed because the trial court should have instructed the jury on attempted child molesting as a lesser included offense.  There is no merit to this claim.

a. *Legal principles.*

"An offense is necessarily included within a charged offense 'if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' [Citation.]" (*People v. Toro* (1989) 47 Cal.3d 966, 972, disapproved on other grounds by *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)  " 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[ ]" ' that the lesser offense, but not the greater, was committed.  [Citations.]  [¶]  In deciding

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

6

whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Ibid.*)

"[O]n appeal we employ a de novo standard of review and independently determine whether an instruction on the lesser included offense . . . should have been given." (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)

"[S]ection 288 prohibits *all* forms of sexually motivated contact with an underage child. Indeed, the 'gist' of the offense has always been the defendant's intent to sexually exploit a child, not the nature of the offending act. [Citation.] '[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act . . . is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . .' [Citation.] [¶] Thus, throughout the statute's history, the cases have made clear that a 'touching' of the victim is required, and that sexual gratification must be presently intended at the time such 'touching' occurs. [Citations.] However, the form, manner, or nature of the offending act is not otherwise restricted. Conviction under the statute has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body. [Citations.] [¶] . . . [M]odern courts state or imply that *any* touching of an underage child is 'lewd or lascivious' within the meaning of section 288 where it is committed for the purpose of sexual arousal. [Citations.]" (*People v. Martinez* (1995) 11 Cal.4th 434, 444-445 (*Martinez*).)

Attempted lewd act on a child is recognized as a lesser included offense of the completed crime. (*People v. Herman* (2002) 97 Cal.App.4th 1369, 1386 [defendant properly convicted of attempted child molesting where he offered teenage girls money to engage in sex and suggested they come with him to the park, but they declined]; *People v. Imler* (1992) 9 Cal.App.4th 1178, 1181 [defendant committed attempted child molesting when he pretended to be holding a 12-year-old's father hostage and, over the telephone, ordered the child to disrobe and touch his own penis, which the child did not

do].) "To sustain a conviction of attempted violation of section 288(a), the prosecution has the burden of demonstrating (1) the defendant intended to commit a lewd and lascivious act with a child under 14 years of age, and (2) the defendant took a direct but ineffectual step toward committing a lewd and lascivious act with a child under 14 years of age. [Citation.]" (*People v. Singh* (2011) 198 Cal.App.4th 364, 368.)

b. *Discussion*.

(1) *Conviction for molesting K. (count 3).*

Hernandez argues the jury should have been instructed on attempted child molesting as to K. because he told Deputy Lopez that "he had placed [K.] on his lap but denied touching her private area. Lopez testified that appellant said he 'continued touching her on her butt.' Therefore, it is not entirely clear what appellant was claiming, i.e., that he simply had his hand on her butt over her clothing, which would be a natural location in such a scenario even if innocently done, or that he was touching [K.] in an attempt to arouse either her, him, or both." However, Hernandez further argues, "in any event, it is reasonably possible that the jury could have found appellant's attempt to kiss [K.] as the lewd act. It could have found that his touching of her, even only if his lap to her butt, was preparatory to his plan to kiss her, which failed as his attempt was thwarted when [K.] moved from appellant's lap."

But if Hernandez touched K.'s buttocks "preparatory to his plan to kiss" her, then he was guilty of the completed crime of child molesting at that point. A similar situation arose in *People v. Lopez* (2010) 185 Cal.App.4th 1220, where the defendant sought sexual gratification by having his step-daughters dress in lingerie and then search blindfolded for coins in the clothing while he watched and photographed them. As the Court of Appeal framed the issue: "The question here is whether there was sufficient evidence of a touching *concurrent* with lewd intent, where the girls dressed themselves out of defendant's presence, but under defendant's direction, for the sexually motivated purpose of playing the money game." (*Id.* at p. 1233, italics added.) Citing *Martinez*'s statement that "the only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances"

8

(*People v. Martinez, supra*, 11 Cal.4th at p. 450), the Court of Appeal concluded that "section 288 encompasses the defendant's act . . . of directing the victims to change into provocative clothing for the sexually motivated purpose of watching the girls search for money in the provocative clothing. Defendant committed the touching acts constructively, through the victims as conduits for the purpose of sexual arousal. Even though defendant may not have experienced sexual arousal at the moment the victims touched themselves when putting on the provocative clothing, defendant's intent when instigating or causing the touchings was lewd and lascivious within the meaning of section 288, since the touchings were sexually motivated and committed for the purpose of defendant's sexual gratification." (*People v. Lopez, supra*, 185 Cal.App.4th at p. 1233.)

Hence, even if the jury believed that Hernandez's touching of K.'s buttocks had been merely preparatory to his intention of committing a lewd act by kissing her, this violated section 288 because the touching "was sexually motivated by defendant's lascivious desire." (*People v. Lopez, supra*, 185 Cal.App.4th at p. 1230.) Hence, the trial court did not err by failing to instruct the jury on attempted child molesting as a lesser included offense of the crime charged in count 3.

(2) *Conviction for molesting Rosa (count 4).*

Hernandez argues the jury should have been instructed on attempted child molesting with regard to both of the alleged child molesting incidents Rosa described. Regarding the incident in which Hernandez picked Rosa up and took her into another room, he told Deputy Lopez that he asked Rosa if he could see her vagina, but she refused; he denied touching Rosa or removing her clothes. Hernandez argues, "Under appellant's version, his asking Rosa to show him her vagina could certainly qualify only as an attempted lewd act, that is, he wanted Rosa to touch her clothing, expose her vagina, which in turn would cause appellant to be aroused." But, under the reasoning of *People v. Lopez, supra*, 185 Cal.App.4th at p. 1233, Hernandez was already guilty of the completed crime of child molesting when he picked Rosa up and took her to another

9

room because he wanted to be sexually aroused by looking at her vagina. Hence, there was no reason to instruct on attempted child molesting as a lesser included offense.

The same is true for the second incident. Hernandez argues: "Rosa also testified that the next day, while teaching her how to ride a bike, appellant put his hand between Rosa's butt and the bicycle seat. Neither said anything and appellant removed his hand and Rosa paddled [*sic*] off. Such conduct could have been interpreted as an attempted lewd act. *The jury could have reasonably found that appellant put his hand in that position planning to then touch Rosa in a more provocative manner*, leading to his arousal. Appellant's voluntary removal of his hand resulted in an ineffectual step toward such goal." (Italics added.) But again, Hernandez had already committed child molesting when he touched Rosa's buttocks while planning to touch her in a more provocative way so he would be sexually aroused.

The trial court did not err by failing to instruct the jury on attempted child molesting as a lesser included offense of the crime charged in count 4.

(3) *Conviction for molesting A. (counts 5 and 6).*

(a) *Count 6*

A. testified that on one occasion, Hernandez pushed her shorts to the side and licked her vagina. As to that incident, Hernandez told Deputy Lopez that he pulled aside her panties and looked at her vagina, but he didn't touch her. Hernandez argues that his conduct, as he described it, would support an attempt to commit a lewd act, but not the completed act. We disagree: Moving A.'s panties in order to look at her vagina constituted child molesting under section 288 because Hernandez would have touched A. through her clothing with a concurrent lewd intent. (See *People v. Martinez*, *supra*, 11 Cal.4th at p. 444 ["Conviction under [section 288] has never depended upon contact with the bare skin or 'private parts' of the defendant or the victim. [Citations.] Stated differently, a lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body."].) Thus, none of the evidence concerning this incident would have supported an instruction for attempted child molestation. Accordingly, this incident did not require an attempted section 288 instruction.

10

(b)    *Count 5*

A. also testified that on a separate occasion, Hernandez laid down next to her and touched her breast and vaginal area under her clothing.  Hernandez described the same incident, but told Deputy Lopez that he simply went into the bedroom, laid down next to A. and became sexually aroused, but he was too afraid to do anything.  As to that incident, Hernandez argues that had the jury believed his testimony it might have convicted him of attempted child molestation because he "planned to commit a lewd act and took the step of laying down next to her 'as a direct [but] ineffectual step toward that goal.' "  (Italics added.)  Based on this theory, he claims the jury should have been instructed on attempted child molesting as a lesser included offense.

"An attempt to commit a lewd act upon a child requires both an intent to arouse, appeal to, or gratify 'the lust, passions, or sexual desires of [the defendant] or the child' (§§ 288, subd. (a), 664) 'and . . . a direct if possibly ineffectual step toward that goal . . . .' [Citation.]  ' "Although mere preparation such as planning or mere intention to commit a crime is insufficient to constitute an attempt, acts which indicate a certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design will be sufficient.  [Citations.]" [Citation.]'  [Citation.]  No clear marker divides acts that are merely preparatory from those initiating the criminal act.  Nonetheless, 'the more clearly the intent to commit the offense is shown . . . "the more likely that steps in the early stages of the commission of the crime will satisfy the overt act requirement" ' of an attempt.  [Citation.]"  (*People v. Crabtree* (2009) 169 Cal.App.4th 1295, 1322.)  " 'Applying criminal culpability to acts directly moving toward commission of crime . . . is an obvious safeguard to society because it makes it unnecessary for police to wait before intervening until the actor has done the substantive evil sought to be prevented.  It allows such criminal conduct to be stopped or intercepted when it becomes clear what the actor's intention is and *when the acts done show that the perpetrator is actually putting his plan into action*.' [Citations.]" (*People v. Dillon* (1983) 34 Cal.3d 441, 453, italics added.)

11

The cases on which Hernandez relies to establish that his admitted conduct supported an instruction for attempted child molestation are inapposite. In *People v. Imler*, *supra*, 9 Cal.App.4th 1178, the defendant spoke on the telephone to a 12-year-old boy. "In response to Imler's questions, Jason J. replied that his mother was away and his father was not home. Imler replied that 'that's because I have him hostage.' Imler demanded $5,000 by the next day, if Jason J. wanted to see his father again. Imler asked Jason what he was wearing, then ordered him to disrobe and touch his penis. Jason J. did not do so, although Imler repeatedly told him to touch himself. Jason J. told Imler he had complied then Imler hung up." (*Id.* at p. 1180.) The Court of Appeal held that "Imler's acts went beyond mere preparation" because he "called the victim, spoke to him, and ordered him to commit lewd acts [citation]" (*id.* at p. 1181), and affirmed the conviction of attempted child molestation.

*People v. Singh*, *supra*, 198 Cal.App.4th 364, found sufficient evidence to sustain a conviction of attempted child molesting where Singh, the subject of a sting operation, believed he was communicating on the internet with 12-year-old girl. Singh "engaged in a sexually explicit discussion with her, asked her detailed sexual questions, told her that he could fulfill her sexual needs," (*id.* at p. 369) and made a date to visit her. The next day, Singh went to her house, where he was confronted by a television reporter and then arrested. The Court of Appeal held the evidence demonstrated Singh had taken "a direct but ineffectual step toward" violating section 288. (*Id.* at p. 368.)

*People v. Crabtree*, *supra*, 169 Cal.App.4th 1293, also involved an internet sting operation. Crabtree had multiple online contacts with a California Department of Justice agent who was posing as "Hope," a 13-year-old runaway. In addition to having sexually explicit conversations, Crabtree sent Hope pictures of people engaging in sex and a picture of his penis. He was arrested after having sent Hope a bus ticket and arranged a meeting at the Los Angeles Greyhound station. Inside his car, police found Viagra, condoms, a bikini, and bubble bath. The Court of Appeal reasoned, "The presence of these items, which are consistent with appellant's sexually-charged online chats with 'Hope,' and the fact he had bought the bikini shortly before his anticipated meeting with

12

'Hope,' strongly show appellant's intent to carry out his intended lewd act upon 'Hope.' Nothing more was necessary." (*Id.* at p. 1322.)

The defendants in the cases cited by Hernandez went beyond mere preparation because each one put his plan into action. Each defendant engaged in sexually explicit conversations with the intended victim. In addition, Imler ordered the victim over the phone to touch himself, while Singh and Crabtree arranged and tried to carry out face-to-face meetings. In this case, with respect to the second incident with A. (count 5), the only thing Hernandez told Deputy Lopez was that he had contemplated molesting A., but then changed his mind without having touched her or even said a single word to her. In this instance, Hernandez's acts did not " ' "indicate a certain, unambiguous intent to commit" ' " child molesting, nor constitute " ' "an immediate step in the present execution of" ' " that offense. (*People v. Crabtree*, *supra*, 169 Cal.App.4th at p. 1322.) According to Hernandez's version of events, Hernandez's intention did not become clear because he never moved to put any plan into action. (See *People v. Dillon* (1983) 34 Cal.3d 441, 453.)

In sum, we conclude the trial court did not err by failing to instruct the jury on attempted child molesting as a lesser included offense of the child molesting charges alleged with respect to A., Rosa and K.

2. *Trial court did not err by failing to instruct on attempted child molesting with respect to the continuous abuse charge related to Stephanie.*

Hernandez contends his conviction of continuous sexual abuse of a child (§ 288.5) against Stephanie must be reversed because the trial court failed to instruct the jury on attempted child molesting. We disagree.

Section 288.5, subdivision (a), provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at

13

the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment in the state prison for a term of 6, 12, or 16 years." Subdivision (b) of section 1203.066, provides: " 'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender."

Hernandez argues that, because some of the acts he admitted to Deputy Lopez arguably constitute only attempted child molesting, rather than completed child molesting, the trial court should have instructed the jury on attempted child molesting since "Stephanie's testimony fails to establish that appellant committed sufficient acts of substantial sexual contact alone to find guilt without also finding guilt on some acts of lewd and lascivious conduct."

The trial court did not err, however, because Hernandez's admissions to Deputy Lopez did not constitute substantial evidence that he committed attempted child molesting. One incident – in which Hernandez allegedly saw Stephanie kneeling on a couch and she asked him to touch her, but he didn't because he was too afraid – fell short of constituting an attempted child molesting. Hernandez's acts on this occasion did not " ' "indicate a certain, unambiguous intent to commit" ' " child molesting, nor constitute " ' "an immediate step in the present execution of" ' " that offense. (*People v. Crabtree*, *supra*, 169 Cal.App.4th at p. 1322.) Hence, no attempted child molesting instruction was warranted as to that incident. In both of the other incidents, Hernandez admitted having touched Stephanie in situations where it was clear that he "was sexually motivated by . . . lascivious desire"[2] (*People v. Lopez*, *supra*, 185 Cal.App.4th at p. 1230) and, therefore, he was guilty of the completed crime of child molesting. Again, no attempted child molesting instruction was warranted.

---

[2] In one of those incidents, Hernandez said he picked Stephanie up and moved her into another room where she undressed and invited him to touch her, but he was too afraid so he left, went into his own bedroom and masturbated. In the other incident, Hernandez asked if he could touch Stephanie; when she refused, he tried to touch her anyway and touched her arm.

14

Moreover, even assuming arguendo that the trial court erred by failing to instruct on attempted child molesting, the error was doubtlessly harmless. "The erroneous failure to instruct on a lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, [836-837] . . . . Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of. [Citations.]" (*People v. Rogers* (2006) 39 Cal.4th 826, 867-868, fn. omitted.) "In determining whether a failure to instruct on a lesser included offense was prejudicial, an appellate court may consider 'whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' [Citations.]" (*Id*. at p. 870.) That is precisely the situation here. It is quite clear the jury thoroughly rejected the proposed defense that all Hernandez did to Stephanie was either resist her sexual provocations altogether or, at most, touch her once on the arm.

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



EDMON, P. J.


We concur:



KITCHING, J.



EGERTON, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.