Filed 2/3/16  P. v. Gomez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072915 |
| v. | (Super. Ct. No. 11F04617) |
| JOSE GOMEZ, | |
| Defendant and Appellant. | |

A jury convicted defendant Jose Victor Gomez on eight counts of committing a lewd and lascivious act upon a child under the age of 14, two counts of sexual intercourse with a child 10 years of age or younger, and two counts of oral copulation with a child 10 years of age or younger.  The jury found the allegation that defendant committed the charged offenses against two or more minors to be true.  The trial court sentenced defendant to an aggregate prison term of 200 years to life.

Defendant now contends (1) the trial court abused its discretion in admitting evidence of uncharged sexual conduct; (2) regarding the charges in counts three and four (lewd and lascivious acts) and counts seven and eight (sexual intercourse), the trial court failed in its sua sponte duty to instruct the jury on the lesser included offense of battery;

1

(3) the count eleven conviction for a lewd and lascivious act must be reversed because count eleven of the information and the verdict form for that count do not state a public offense; and (4) the count ten conviction for a lewd and lascivious act must be reversed because there is no substantial evidence that defendant used a sex toy more than once on one of the minors.

We conclude (1) the trial court did not abuse its discretion in admitting uncharged sexual conduct evidence; (2) even if battery is a lesser and necessarily included offense of the charged crimes, the trial court had no sua sponte duty to instruct the jury on battery because there was no substantial evidence upon which the jury could have concluded the offenses committed were battery but not the charged crimes; (3) reversal of the count eleven conviction is not warranted because defendant has not demonstrated prejudice; and (4) the count ten conviction must be reversed because there is no substantial evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed a lewd or lascivious act with a sex toy on one of the minors more than once.

We will modify the judgment to reverse the count ten conviction for a lewd and lascivious act, vacate the sentence imposed on that count, and otherwise affirm the judgment. We will direct the trial court to amend the abstract of judgment to reflect the judgment as modified and specify the aggregate prison term, information that is missing from the current abstract of judgment.

BACKGROUND

Defendant and a woman named Kristy had two daughters.[1]  E. was 13 years old and K. was 10 years old at the time of the trial in 2012.

---

[1] We refer to various individuals by first name or initial to protect privacy.

E. disclosed to Kristy on June 30, 2011, that defendant had sexual intercourse with her. That was the first time E. told Kristy about any sexual misconduct by defendant. Kristy reported the misconduct to police that day. The police interviewed E., but did not have E. submit to a sexual assault examination in part because the last reported act of sexual assault occurred two or three years prior to E.'s disclosure.

Kristy made a pretext call to defendant at the request of the police. Defendant admitted to Kristy that E. put on dresses and danced provocatively for him. He admitted apologizing to E. because she said he groped her. Defendant said he promised E. he would not do anything like that again. Defendant denied having sexual intercourse with E. or having E. lick jelly off his penis. He denied doing the other things E. reported, but said he did not remember what happened because he was doing a lot of drugs and was not sober "back in the day." The People played an audio recording of the pretext call during the trial.

Police arrested defendant after the pretext call. They found pornographic magazines and movies during a search of defendant's home. No pornographic images involving children were found on defendant's home computer or cell phone.

Defendant agreed to speak with detectives after he was advised of his *Miranda* rights. (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].) Detective Anthony Saika opined defendant did not exhibit any signs of being under the influence of alcohol or drugs at the time of his arrest or during his interrogation.

Defendant made a number of admissions during the interrogation. He admitted the following: E. orally copulated him multiple times. E. sucked his penis after jelly was applied to his penis. E. "rode" or "dry humped" him a few times, and he ejaculated probably twice. There was skin to skin contact between his penis and E.'s vagina when he had E. "ride the horse," although his penis did not go in E.'s vagina. E. dressed up in costumes and danced for defendant. Defendant slapped E.'s butt. Defendant made promises to E., like promising to take her to the park, in exchange for sexual acts.

3

Defendant apologized to E. for the things he did to her, and he promised not to do those things anymore after E. had panic attacks. Defendant denied using dildos with E. or showing her pornographic movies. Defendant said he was ashamed. He told the interrogating officers, "I pretty much screwed myself telling you everything."

A videotape of the statement defendant gave police was played at the trial.

Defendant called Kristy from jail. He told Kristy he was not mad at Kristy or E., and he was glad E. said something because he wanted to tell Kristy and felt guilty. The People played an audio recording of that telephone call at the trial.

A forensic interview specialist interviewed E. and K. K. did not disclose any sexual conduct by defendant during her initial interview. But K. was re-interviewed after she disclosed to E. that defendant had touched her in a bad way. K. disclosed at her second interview that when she was eight years old, defendant rolled a massager over her private part and instructed her to roll the massager on his penis. A videotape of K.'s second interview was played at the trial.

E. testified at the trial. She described numerous sexual acts with defendant, recounting the following:

When E. was in preschool or kindergarten, defendant put grape or strawberry jelly on his penis and had E. lick the jelly off his penis. E. saw white liquid come out of defendant's penis. The liquid went into a washrag or sock. Afterward, defendant praised E. and gave her a kiss on her head. That sexual act occurred more than three times.

On one occasion, defendant got on top of E., instructed her to wrap her legs around him, and defendant inserted his penis inside E. E. kept trying to get up because it felt very uncomfortable for her, but defendant pulled her back down. E. felt pain. E. was in preschool or kindergarten at the time.

Defendant had E. do something defendant called "ride the pony" on more than 10 occasions. Defendant put his penis inside E.'s vagina during a "ride the pony" incident when E. was seven or eight years old. E. also recalled a position defendant called

4

"something about a dog" where E. was on her hands and knees and defendant inserted his penis inside her from behind, causing E. pain.

When E. was less than nine years old, defendant put a clear liquid on his penis and inserted his penis inside E.'s vagina while defendant was behind E. Defendant put his penis inside E. multiple times, going in and out, until white stuff came out. E. felt discomfort and some pain.

On one occasion in 2008 or 2009, defendant got into E.'s bed after Kristy had left for work. Defendant put his penis inside E. from behind.

On more than five occasions, defendant made E. dress up in outfits and dance for him. Defendant masturbated on his bed while E. danced. Defendant also showed E. pornographic movies.

E. also testified about sex toys. She said defendant put a pink vibrator inside or near her vagina. E. could not remember if there was more than one incident involving the pink vibrator. E. remembered a red dildo, but at trial she did not remember how defendant used the red dildo.

Defendant promised to take E. swimming or to the park or to give E. money in exchange for some of the sexual acts she performed. Defendant told E. something to the effect that he deserved it and he had been a good dad all week.

E. told a friend she was being touched inappropriately when she was in kindergarten. When grown-ups questioned her, however, E. lied and denied anything happened.

The sexual conduct with defendant stopped when E. was in fourth or fifth grade. At that time E. was stressed and kept vomiting. E. did not tell Kristy what was going on because E. was afraid. Instead, E. talked to defendant, and defendant promised he would stop. Although the sexual acts stopped, defendant grabbed or smacked E.'s butt whenever he passed her.

K. also testified at the trial. She said defendant used a massager to rub her private part, then instructed K. to use the massager on his penis and K. complied. K. was eight when the incident occurred.

In 2010, defendant's niece S. accused defendant of sexual misconduct against her when she was three to five years old. S. is the daughter of defendant's brother. S. was 17 years old when she testified at the trial as follows: She lived in the same house as defendant when she was three or four years old. Defendant had S. perform oral sex on him more than once when she was between three and five years old and he babysat her. Defendant placed something that tasted like cherries on his penis on those occasions. Defendant did not ejaculate in S.'s mouth. After S. performed oral sex on defendant, defendant praised S. and gave her a dollar bill that was folded into a ring. S. stopped living with defendant when she was five years old. She did not tell anyone about what happened until 2010, when she was 15 years old and had panic attacks. Her aunt Alma asked her if anything had ever happened to her. S. reluctantly told her aunt about what defendant had done to her.

Defendant testified at the trial. He said he used methamphetamine and marijuana and had been drinking alcohol on the day of his arrest. He said he felt sick during his interrogation. He claimed he told the interrogating officers what they wanted to hear because he wanted the questioning to stop. Defendant testified that the admissions he made during his interrogation were false.

Defendant said the allegations made against him by E. and K. were lies. He denied the sexual acts E. and K. described. He said he lied during the pretext call when he admitted groping E. and when he said he saw E. playing with a red dildo. He said E. had panic attacks when he and Kristy separated. He denied ever talking to E. about not touching E. anymore. He suggested K. made up what she reported because she received gas during a dental procedure and was "a little spacey" afterwards. Defendant also denied any sexual contact with S.

6

Defendant presented Dr. James Crawford-Jakubiak as an expert on child sexual assault. The doctor said that while a sexual assault examination may show prior injury to the hymen, the majority of injuries to the vagina heal in a matter of days to weeks and leave no trace of injury. The doctor agreed that sometimes no injury results even when penetration of the labia majora and labia minora occurred. He opined that the vast majority of children who disclose sexual abuse in the past had normal or nonspecific exams when they were evaluated. He also opined it was not uncommon for child victims to delay in disclosing sexual abuse or to not disclose everything that happened all at once.

Defendant also called Dr. John Shields, a forensic psychologist. Dr. Shields opined, based on the result of tests he administered on defendant, that defendant was significantly more suggestible than most people. The doctor opined that defendant was very vulnerable to suggestion in the course of an interview. He added that people who score high on the type of suggestibility test he administered were more likely to give an unreliable admission.

The jury found defendant guilty on eight counts of committing a lewd and lascivious act upon a child under the age of 14 years (Pen. Code, § 288, subd. (a)),[2] two counts of sexual intercourse with a child 10 years of age or younger (§ 288.7, subd. (a)), and two counts of oral copulation with a child 10 years of age or younger (§ 288.7, subd. (b)). The jury found the allegation that defendant committed the charged offenses against two or more victims to be true.

The trial court sentenced defendant to a consecutive prison term of 15 years to life on each conviction for lewd and lascivious acts. The trial court also imposed a consecutive 15-year-to-life term for each oral copulation conviction and a consecutive

---

[2] Undesignated statutory references are to the Penal Code.

7

25-year-to-life term for each sexual intercourse conviction.  Defendant received an aggregate prison term of 200 years to life.

DISCUSSION

I

Defendant claims the trial court abused its discretion in admitting evidence of uncharged sexual conduct.

A

The People moved to admit evidence that defendant committed sexual offenses against S. under Evidence Code section 1108 to show defendant had a propensity to engage in the sexual offenses charged in this case and defendant committed the charged offenses.  The People also sought to admit the evidence relating to S. under Evidence Code section 1101, subdivision (b) to show intent, method of operation, and absence of mistake.

The parties presented the following facts to the trial court.  S. was defendant's niece.  Defendant and S. lived in the same house at the time of the alleged misconduct.  Defendant allegedly had S. orally copulate him when she was between two and five years old.  Defendant put a substance that tasted like cherries on his penis.  He allegedly told S. she had done a good job after she orally copulated him.  And he gave her a dollar bill fashioned into a ring to thank her.  S. reported the alleged acts to police in July 2010, when she was 14 or 15 years old.  Defendant was not prosecuted based on S.'s accusation.

E. was defendant's biological daughter.  She alleged defendant molested her on multiple occasions starting when E. was in preschool and ending when E. was in third or fourth grade.  Among other things, defendant allegedly had E. lick strawberry or grape jelly off defendant's penis on multiple occasions.  The alleged sexual acts occurred in defendant and E.'s home.  E. reported the misconduct on June 30, 2011, when she was 12 years old.

The trial court admitted the evidence relating to S. under Evidence Code section 1101, subdivision (b), to show defendant's intent and the absence of mistake. The trial court also admitted the evidence under Evidence Code section 1108 to show defendant's propensity to commit the charged crimes. Regarding Evidence Code section 352, the trial court concluded the probative value of the evidence relating to S. was not substantially outweighed by the probability that its admission would necessitate undue consumption of time or create a substantial danger of undue prejudice, confusing the issues, or misleading the jury. The trial court ruled the charged and uncharged offenses were similar in that S. and E. were similar in age at the time of the alleged misconduct; S. and E. were related to the defendant; the alleged acts occurred in the girls' homes where defendant had access to them; and defendant placed a flavored substance on his penis before S. and E. orally copulated him. The trial court said the uncharged acts were probative on the issues of intent, absence of mistake, and refuting defendant's claim that he did not know what he was doing during the incidents. As for prejudice, the trial court concluded the uncharged acts were not more inflammatory than the charged acts because the uncharged acts were less in number and did not involve a biological child; the evidence was not remote in relation to the charged acts; and admission of the evidence would not cause an undue consumption of time at the trial because the People would call only two witnesses: S., who was not expected to recant, and possibly the witness who took S.'s statement. The trial court said it considered the fact that the uncharged acts did not result in a conviction, but giving the CALCRIM No. 375 instruction would minimize the risk of confusion or that the jury would be tempted to punish defendant for the uncharged offenses.

B

In general, evidence of a defendant's uncharged conduct is not admissible to prove that the defendant has a criminal disposition or propensity. (Evid. Code, § 1101, subd. (a); *People v. Kipp* (1998) 18 Cal.4th 349, 369.) But Evidence Code section 1108

9

provides that when the defendant is charged with a sexual offense, evidence of the defendant's other sexual offenses is not made inadmissible by Evidence Code section 1101 if the evidence is not inadmissible under Evidence Code section 352.

In enacting Evidence Code section 1108, the Legislature recognized that " 'sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence.  The ensuing trial[, thus,] often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations.' " (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1160, 1164 (*Villatoro*); *People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)  Evidence Code section 1108 allows the trier of fact to consider uncharged sexual offense evidence as evidence of the defendant's propensity to commit sexual offenses in evaluating the defendant's and the victim's credibility and in deciding whether the defendant committed the charged sexual offense. (*Villatoro, supra,* 54 Cal.4th at pp. 1160, 1164, 1166-1167; *Falsetta, supra,* 21 Cal.4th at pp. 911-912, 922.)

However, uncharged sexual conduct evidence is inadmissible if the probative value of the evidence is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.  (Evid. Code, §§ 352, 1108, subd. (a).)  The probative value of uncharged sexual conduct evidence is increased by the relative similarity between the charged and uncharged offenses, the close proximity between the uncharged and charged acts, and the independent sources of evidence in each offense.  (*Falsetta, supra*, 21 Cal.4th at p. 917.)  The prejudicial impact of uncharged sexual conduct evidence is reduced if the uncharged act resulted in a criminal conviction and a substantial prison term, ensuring that the jury would not be tempted to convict the defendant simply to punish him for the uncharged act, and that the jury's attention would not be diverted by having to determine whether defendant committed the uncharged act.

10

(*Ibid.*)  We review a trial court's Evidence Code section 352 determination under the deferential abuse of discretion standard.  (*People v. Avila* (2014) 59 Cal.4th 496, 515.)

As defendant acknowledges, the charged and uncharged offenses in this case are similar.  Similarity between the charged and uncharged offenses is a factor for a trial court to consider in weighing the probative value and prejudicial impact of the uncharged conduct evidence pursuant to Evidence Code section 352.  (*Falsetta, supra*, 21 Cal.4th at p. 917; *People v. Robertson* (2012) 208 Cal.App.4th 965, 991 (*Robertson*).)  E. and S. were about the same age when defendant had them orally copulate him.  Defendant lived in the same household with each girl at the time of the sexual acts, and defendant was related to the girls by blood.  The charged and uncharged offenses involve the same sexual act.  Defendant had both girls orally copulate him on multiple occasions.  He applied a fruit-flavored jelly to his penis and had the girls lick off the jelly.  The sexual acts occurred in the home defendant shared with each girl when defendant was watching the child.  Defendant concedes that the similarities between the charged and uncharged offenses give the uncharged conduct evidence probative value on the issues of defendant's propensity to commit the charged sexual offenses, intent, and common plan or scheme.

Evidence of the uncharged offenses is also probative because defendant denied engaging in any sexual acts with E. or K.  At trial defendant's counsel attacked the credibility of E. and K. and suggested their allegations of sexual misconduct were concocted.  As defense counsel pointed out to the jury, there was no physical evidence defendant had sexual intercourse with E.  Uncharged sexual offense evidence is highly probative where the defendant denies the charged offense occurred and there is no forensic evidence proving the charged offense occurred.  (*Robertson, supra*, 208 Cal.App.4th at p. 993; *People v. Hollie* (2010) 180 Cal.App.4th 1262, 1275 [evidence of prior sexual offense was probative where the defendant claimed the victim's report of a forcible sexual assault was concocted]; *People v. Waples* (2000)

11

79 Cal.App.4th 1389, 1395 (*Waples*) [propensity evidence was highly relevant where the defense attempted to paint the complainant as a liar or mistaken in her report].)

Defendant argues the probative value of the uncharged conduct evidence is reduced because S. and E. are related and thus are not independent witnesses. "The term 'independent' ordinarily means '[f]ree from the influence, guidance, or control of another or others' or '[n]ot determined or influenced by someone or something else.' " (*Estate of Winans* (2010) 183 Cal.App.4th 102, 120; *People v. Ewoldt* (1994) 7 Cal.4th 380, 404 (*Ewoldt*).) Nothing in the record shows S. influenced E.'s allegations against defendant or E. influenced S.'s allegations. There is no evidence E. was aware of the details of S.'s accusations regarding oral copulation when E. disclosed to Kristy. S.'s trial testimony supports our conclusion. S. testified she was not close to E., and never told E. or K. about what happened between her and defendant. E. similarly testified she did not know the details of what defendant did to S. S. reported defendant's conduct against her in 2010, before E. disclosed that defendant had sexually abused her. The independent sources of the evidence supporting the charged and uncharged sexual conduct enhanced the probative value of the evidence relating to S.

Defendant further claims the three- to nine-year gap between the charged and uncharged conduct and the fact that defendant was a juvenile when the uncharged sexual acts occurred reduced the probative value of the uncharged conduct evidence.

There is no bright line rule regarding whether a prior act is too remote to be admissible under Evidence Code section 352. (*Ewoldt, supra,* 7 Cal.4th at p. 405 [uncharged act occurred 12 years prior to trial]; *People v. Branch* (2001) 91 Cal.App.4th 274, 278, 281, 284 [uncharged sexual acts committed over 30 years before the charged offenses occurred were properly admitted under Evidence Code sections 1101 and 1108]; *Waples, supra,* 79 Cal.App.4th at pp. 1392-1393, 1395 [uncharged sexual acts that occurred 18 to 25 years before the charged offenses were not too remote for purposes of Evidence Code section 352]; *People v. Soto* (1998) 64 Cal.App.4th 966, 977-978, 990-

12

992 [uncharged sexual conduct that occurred 20 to 30 years before the trial were properly admitted under Evidence Code sections 1108 and 352].) The facts before the trial court were that the uncharged acts occurred from 1997 to 2000, and the sexual acts with E. started in 2003 or 2004. A three- or four-year gap between the end of the uncharged conduct and the beginning of the charged conduct is not so significant as to reduce the probative value of the uncharged conduct evidence. Additionally, the significant similarities between the prior and the charged offenses balanced out any remoteness between the charged and uncharged conduct. (*Branch, supra,* 91 Cal.App.4th at p. 285.)

With regard to defendant's contention that his youth at the time of the uncharged offenses reduced the probative value of the evidence relating to S., defendant did not assert such claim in the trial court. There is also nothing in the record to indicate the uncharged sexual conduct occurred during "a period of aberrant behavior in youth," as defendant claims. We do not consider those claims. (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 243 [we review the correctness of the trial court's ruling at the time it was made, not by reference to evidence produced at a later date]; *Robertson, supra,* 208 Cal.App.4th at p. 991.)

Defendant further attacks the probative value of the evidence relating to S. by pointing out that S. delayed in disclosing the uncharged sexual conduct and that she was going to testify about events that occurred 12 to 15 years before the trial. Those facts affected the weight of S.'s proposed testimony. But defendant had an opportunity to test S.'s memory about what defendant allegedly did to her and to challenge S.'s credibility. And the jury could assess S.'s credibility. Further, the trial court instructed the jury pursuant to CALCRIM No. 226 that it may consider factors, including how well the witness was able to remember and describe what happened, in evaluating the witness's testimony. (Evid. Code, § 780; *People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 883-884.) The instruction helped assure jury consideration of any remoteness of the uncharged conduct evidence.

13

With regard to the factors pertinent to an assessment of the prejudicial effect of the uncharged sexual conduct evidence, defendant argues admission of the uncharged conduct evidence was prejudicial because it was more inflammatory than the charged offenses and its admission created a risk the jury would convict defendant to punish him for his prior offenses.

S.'s proposed testimony did not describe acts that were more inflammatory than the anticipated testimony concerning the charged offenses. The charged offenses alleged a greater variety of sexual acts and more serious offenses than the uncharged offenses, including sexual intercourse with a child. (§§ 288, subd. (a) [punishment for lewd or lascivious acts upon a child who is under the age of 14 years is three, six, or eight years in prison]; 288.7, subd. (a) [punishment for sexual intercourse with a child who is 10 years of age or younger is 25 years to life in prison].)

The trial court considered the risk that the jury would be tempted to punish defendant for the uncharged sexual offenses because defendant was not prosecuted for those alleged acts. It determined that giving the CALCRIM No. 375 instruction would minimize any risk the jury would be tempted to punish defendant for the uncharged offenses. The trial court in fact instructed the jury on the limited use of uncharged conduct evidence. The trial court also instructed the jury on the elements of each charged offense, and said the People must prove each charge beyond a reasonable doubt and the uncharged conduct evidence does not, by itself, prove defendant was guilty of the charged offenses. As instructed, the jury was not permitted to convict defendant of the current charges simply because he previously committed sexual offenses. The instructions counterbalanced any risk the jury might punish defendant for his uncharged acts. (*Falsetta, supra,* 21 Cal.4th at p. 920; *People v. Frazier* (2001) 89 Cal.App.4th 30, 42.) Defendant fails to demonstrate the trial court's assessment was an abuse of its discretion.

14

Moreover, the record indicates the uncharged conduct evidence did not result in prejudice. The jury questions during deliberations suggest the jury did not refer to defendant's uncharged acts. We see nothing in the record to suggest the jury convicted defendant because it wanted to punish him for his conduct against S.

Defendant also argues admission of the uncharged conduct evidence was prejudicial because it painted defendant as a serial child molester. But the prosecutor did not label defendant a serial child molester. (*People v. Rogers* (2013) 57 Cal.4th 296, 331.) While admission of other sexual offense evidence could create a risk the jury would perceive the defendant as a serial sexual offender, the Legislature nonetheless authorized the admission of such propensity evidence. (Evid. Code, § 1108.) The admission of uncharged sexual offense evidence under Evidence Code section 1108 is not treated as per se unduly prejudicial. (*Villatoro, supra*, 54 Cal.4th at pp. 1160, 1164; *Falsetta, supra,* 21 Cal.4th at pp. 911, 916-917.) And the California Supreme Court recognized additional instances of similar misconduct can increase the probative value of uncharged conduct evidence. (*Ewoldt, supra*, 7 Cal.4th at pp. 404-405.) Here, the uncharged conduct evidence was not unduly prejudicial.

We conclude the trial court did not abuse its discretion in admitting the uncharged sexual conduct evidence.

## II

Defendant next contends that with regard to the charges in counts three and four (lewd and lascivious acts) and counts seven and eight (sexual intercourse), the trial court failed in its sua sponte duty to instruct the jury on the lesser included offense of battery.

"An uncharged offense is included in a greater charged offense if either (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test), or (2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 349, italics omitted; see *People v. Shockley* (2013) 58 Cal.4th 400,

404 (*Shockley*).) "Under the elements test, a court determines whether, as a matter of law, the statutory definition of the greater offense necessarily includes the lesser offense." (*Parson, supra*, 44 Cal.4th at p. 349.) "Under the accusatory pleading test, a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former." (*Ibid.*)

The elements of the lewd or lascivious act offenses include the following: (1) the willful commission of a lewd or lascivious act, that is, an act which is lustful, immoral, seductive, or degrading; (2) upon or with the body, or any part thereof, of a child under 14 years of age; (3) with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of the defendant or the child. (§ 288, subd. (a); *People v. Memro* (1985) 38 Cal.3d 658, 697, overruled on another ground by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2; *People v. Webb* (1958) 158 Cal.App.2d 537, 542.) Any touching of a child under the age of 14 violates section 288, subdivision (a), even if the touching is outwardly innocuous and inoffensive, if the touching is accompanied by the requisite intent. (*Shockley, supra,* 58 Cal.4th at p. 404.)

A battery is any willful and unlawful use of force or violence upon the person of another. (§ 242.) "Willful" means intentional. (*People v. Wright* (2002) 100 Cal.App.4th 703, 721, fn. 21.) Any harmful or offensive touching constitutes an unlawful use of force or violence. (*Shockley, supra,* 58 Cal.4th at pp. 404-405.)

The California Supreme Court recently held that, under the elements test, battery is not a lesser and necessarily included offense of committing a lewd or lascivious act upon a child under the age of 14 years. (*Shockley, supra,* 58 Cal.4th at p. 406.) In accordance with *Shockley, supra,* 58 Cal.4th 400, we reject defendant's sua sponte instruction claim with regard to counts three and four under the elements test.

The convictions on counts three and four were based on defendant putting his penis in E.'s vagina. Assuming that battery is a lesser and necessarily included offense

16

under the pleading test for counts three and four, and that battery is also a lesser and necessarily included offense for the convictions on counts seven and eight (sexual intercourse),[3] we nevertheless conclude the trial court had no sua sponte duty to instruct on battery because there was no substantial evidence upon which the jury could have concluded that defendant committed a battery but not the charged offenses.

A trial court has a sua sponte duty to instruct on a lesser included offense only if there is substantial evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense. (*Shockley, supra*, 58 Cal.4th at p. 403; *People v. Souza* (2012) 54 Cal.4th 90, 116.) The purpose of the rule is " 'to assure, in the interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence. [Citation.]' In light of this purpose, the court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense." (*Shockley, supra*, 58 Cal.4th at pp. 403-404.)

At trial defendant denied E.'s allegations. Defendant said he did not have sex with E. Defendant did not admit he touched E. in any harmful or offensive manner. Defendant also denied putting his penis inside E. during the pretext call. When detectives said, during the interrogation, that they knew defendant put his penis in E.'s vagina, defendant was equivocal. But then he said his penis "never went in." While defendant admitted to some sexual contact with E. during the interrogation, at trial he disavowed any admission he made during the interrogation. Defendant said he lied to the

---

**3** The elements for sexual intercourse with a child under the age of 10 include the following: (1) the defendant engaged in sexual intercourse; (2) with a child who is 10 years of age or younger; and (3) at the time of the act, the defendant was 18 years of age or older. (§ 288.7, subd. (a).) "Sexual intercourse" does not require penetration of the victim's vagina; penetration of the victim's labia majora suffices. (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097.)

17

interrogating officers.  Consistent with defendant's denials, defendant's trial counsel said there were no lesser included offenses on which the trial court must instruct the jury.

E., on the other hand, testified about multiple occasions when defendant put his penis inside her vagina, causing E. to feel discomfort and pain.  E. had consistently reported that defendant's penis went inside her vagina.  E. testified at trial that a suggestion by a therapist she had been seeing recently caused her to question whether she accurately remembered what had happened.  But E. remembered defendant applied a liquid on his penis and placed his penis inside her vagina.  She then felt discomfort and pain.  She said defendant's penis went in and out, and after that white stuff came out.  E. recalled another occasion when defendant put his penis in her vagina from behind, while E. was on her hands and knees.  E. said it hurt when defendant put his penis inside her.  After describing the various sexual acts she and defendant had engaged in, E. confirmed defendant had actually done the things she remembered and testified about at the trial.  E. testified she was being accurate when she told detectives defendant's penis went inside her body.  As the prosecutor said, the jury will either believe defendant or E.

On this record, no substantial evidence supported a finding that defendant was guilty of battery, but not sexual intercourse or a lewd or lascivious act with a child based on the act of putting his penis in E.'s vagina.  Accordingly, the trial court had no duty to sua sponte instruct on battery.  (*People v. King* (2010) 183 Cal.App.4th 1281, 1319 [" 'A trial court need not . . . instruct on lesser included offenses when the evidence shows that the defendant is either guilty of the crime charged or not guilty of any crime . . .' "].)

III

Defendant further argues his count eleven conviction for a lewd and lascivious act must be reversed because count eleven of the information and the verdict form for that count do not state a public offense.

An accusatory pleading must contain a statement of the public offense or offenses charged therein.  (§ 950.)  The statement of the offense may be in the words of the statute

18

or in any words sufficient to give the accused notice of the offense of which he is accused.  (§ 952.)  The purpose of the pleading is to provide the defendant with notice of the offense charged so the defendant may have a reasonable opportunity to prepare a defense and is not taken by surprise by the evidence offered at trial.  (*People v. Stone* (2009) 46 Cal.4th 131, 141; *People v. Fitzgerald* (1997) 59 Cal.App.4th 932, 936.)  A defective pleading will not result in a reversal of the judgment unless a substantial right of the defendant is adversely affected.  (§ 1404 ["Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."]; *People v. Paul* (1978) 78 Cal.App.3d 32, 44 (*Paul*); *People v. Massey* (1957) 151 Cal.App.2d 623, 649; *People v. Schoeller* (1950) 96 Cal.App.2d 61, 64.)  A defendant may raise the claim that the information does not state a public offense on appeal even though he did not raise the claim in the trial court.  (*Paul, supra,* 78 Cal.App.3d at p. 42; *Schoeller, supra,* 96 Cal.App.2d at p. 62.)

Count eleven charged defendant with violating section 288, subdivision (a), in that defendant "did willfully, unlawfully, and lewdly commit a lewd and lascivious act, to wit: defendant asking victim to use massager on his groin area, upon and with the body and certain parts and members thereof of [K.], a child under the age of fourteen years, with the intent of arousing, appealing to, and gratifying the lust, passions, and sexual desires of the said defendant and the said child."  Defendant says count eleven does not allege a violation of section 288, subdivision (a) because it does not allege a touching, which is a required element of a section 288, subdivision (a); instead, count eleven charges defendant with "asking" K. to perform a lewd act.

The record shows, however, that defendant was aware of the basis for count eleven. (*Paul, supra*, 78 Cal.App.3d at pp. 42-44 [the People's failure to allege an overt act in the information, as required by statute, did not warrant reversal of the conviction

19

where the defendant was aware of the evidence against him and of the overt acts upon which the charge was based].)  Defendant's pretrial briefs state K. reported that defendant made K. touch defendant's genitals with a massager.  At trial defendant did not object on the ground of surprise or relevancy when K. testified she rolled a massager on defendant's penis upon defendant's instruction.

Additionally, the trial court instructed the jury, pursuant to CALCRIM No. 252 and 1110, that a touching is required in order to violate section 288, subdivision (a).  K.'s testimony supported the verdict on count eleven by showing that defendant willfully caused a child to touch defendant's body.  (*People v. Lopez* (2010) 185 Cal.App.4th 1220, 1229; see e.g., *People v. Babcock* (1993) 14 Cal.App.4th 383, 385 [the defendant was convicted of committing lewd or lascivious acts upon a child under the age of 14 years by use of force where he took the child's hand and placed it on his crotch]; *People v. Pitmon* (1985) 170 Cal.App.3d 38, 48, disapproved on another point in *People v. Soto* (2011) 51 Cal.4th 229, 248, fn. 12 [forcing minor to rub defendant's genitals is a lewd act].)  We presume the jury followed the trial court's instruction when it found defendant guilty on count eleven.  (*People v. Lauman* (1921) 187 Cal. 214, 219.)

Defendant's trial counsel asked K., during cross-examination, whether she had gone to the dentist on the day of the alleged misconduct and whether the dentist gave her a gas which made her feel numb and dizzy.  Defendant's trial counsel argued to the jury that K. was "out of it" as a result of her dental procedure.  He argued K.'s description of what happened did not make sense.  Defense counsel also argued K. made up a story about the massager because she saw E. getting more attention, and K. "wants to be included."  Defendant does not show how the manner in which count eleven was charged misled him in the preparation of his defense or otherwise resulted in prejudice to him. We will not reverse the judgment in the absence of a showing of prejudicial error.  (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . in any cause . . . for any error as

20

to any matter of pleading . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Codina* (1947) 30 Cal.2d 356, 360 [even if pleading was defective, reversal of the judgment was not warranted where the trial proceeded as if the omitted allegation was in the information; defendant did not notice the omission; and the trial court properly instructed the jury as to the elements of the offense]; *Paul, supra,* 78 Cal.App.3d at p. 44.)

IV

Defendant also contends the count ten conviction for a lewd and lascivious act must be reversed because there is no substantial evidence that defendant used a sex toy more than once on one of the minors. We agree.

"An appellate court called upon to review the sufficiency of the evidence supporting a judgment of conviction of a criminal offense must, after a review of the whole record, determine whether the evidence is such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People v. Bean* (1988) 46 Cal.3d 919, 932.) The reviewing court does not determine the facts. (*People v. Nelson* (2011) 51 Cal.4th 198, 210.) Rather, it examines " ' "the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence -- evidence that is reasonable, credible and of solid value -- such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*Ibid.*) The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Ibid.*) The appellate court does not reweigh evidence or reevaluate a witness's credibility. (*Ibid.*) "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings,

the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*Bean, supra,* 46 Cal.3d at pp. 932-933.)

Count nine alleges defendant violated section 288, subdivision (a) in that he used a sex toy on E. the "first time." Count ten alleges a violation of section 288, subdivision (a) based on defendant using a sex toy on E. the "last time."

E. testified defendant put a pink vibrator inside or near her vagina. E. felt the vibrator poking her and she jumped from pain. E. could not remember if defendant used the pink vibrator on her more than once.

E. also remembered a red dildo, but at trial she could not remember how defendant used the red dildo. E. said she had no memory associated with the red dildo. She just remembered the item. E. did not remember reporting to the authorities that defendant placed a red dildo in her vagina. E. said she knew something happened involving the red dildo because she got a bad feeling, the same feeling she associated with the pink vibrator, when she saw the red dildo. Police recovered a red dildo from Kristy. Defendant told Kristy, during the pretext call, that he caught E. playing with Kristy's red dildo. During his interrogation defendant said he caught E. playing with Kristy's dildos, not specifying which dildos he saw. Defendant did not admit he participated in any act involving a red dildo. We have not found, and the parties do not cite, any other evidence relating to an act with a red dildo. There was no evidence of other sex toys.

On this record, there is no substantial evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that defendant committed a lewd or lascivious act with a sex toy on E. on more than one occasion. Consequently, the conviction on count ten must be reversed and the sentence on that count must be vacated.

DISPOSITION

The judgment is modified to reverse defendant's count ten conviction for a lewd and lascivious act and to vacate the sentence imposed on that count. The judgment is

otherwise affirmed. The trial court shall prepare an amended abstract of judgment reflecting the judgment as modified and specifying the aggregate prison term, and shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

/S/

Mauro, J.

We concur:

/S/

Nicholson, Acting P. J.

/S/

Robie, J.