Filed 6/21/23  P. v. Cruz CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZENAR DELA CRUZ,<br><br>    Defendant and Appellant. | D080405<br><br><br><br>(Super. Ct. No. SCD287361) |

APPEAL from a judgment of the Superior Court of San Diego County, Aaron H. Katz, Judge.  Affirmed.

Aurora E. Berwick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Zenar Dela Cruz of committing one count of a lewd act upon a dependent adult by a caretaker.  (Pen. Code,[1] § 288, subd. (c)(2).)  The

---

[1]    Undesignated statutory references are to the Penal Code.

court sentenced him to one year in state prison. Dela Cruz contends: (1) insufficient evidence supported the finding that he constructively touched the victim; and (2) the court prejudicially erred by not instructing the jury on proximate causation. We affirm.

FACTUAL AND PROCEDURAL HISTORY

The victim, D.W., who was 87 years old in 2020, lived with her daughter and granddaughter. D.W. had advanced dementia, was bedridden, and required the assistance of caregivers, including Dela Cruz, who started taking care of D.W. in February 2020. He worked six to seven days a week, and his duties included transferring D.W. into and out of her wheelchair, making breakfast for her, washing her face, and changing her diapers. D.W.'s bed was in the living room, and overnight caregivers were allowed to rest on a couch near D.W.'s bed.

D.W.'s granddaughter, A.C., is a licensed mental health therapist. She testified that one morning in May 2020, she woke up about one hour earlier than usual and went from her upstairs bedroom to the kitchen downstairs. She saw D.W. asleep in her bed in the living room. Dela Cruz was asleep on the nearby couch. A.C. started to make coffee. Shortly afterwards, she saw Dela Cruz get up, stretch, and pull his penis out of his sweatpants. He stood directly facing D.W. and exposed his erect penis to her. D.W.'s hand reached out and touched Dela Cruz's penis, and she appeared to rub it.

A.C. thought that a sex act was occurring, and asked, "What's going on?" Dela Cruz quickly pulled up his sweatpants and ran into the bathroom. When he returned after a short time, he began doing his daily duties. D.W. remarked that his body was "so warm," and she told him he could get into bed with her. She then said that "his dick [was] so big." Dela Cruz "shushed" D.W.

2

A.C. recounted the incident to her mother, who immediately fired Dela Cruz and called police. A female caregiver, B.M., arrived to begin her morning shift, and learned what happened. A.C. reported the matter to Adult Protective Services. That same day, A.C. videorecorded an interview with D.W. about the incident to document D.W.'s recollection of it. The jury viewed the video at trial.[2]

In the video, D.W. repeated that Dela Cruz liked to show off his penis. She stated that he had been showing her his penis for "the last two to three months maybe." She said he would talk openly about sexual matters, which made her uncomfortable, and he would expose himself. A.C. asked D.W. about the incident with Dela Cruz that morning, and mentioned D.W. did not seem to be scared or uncomfortable. D.W. responded, "No, I didn't like it." She said she was "uncomfortable with a lot of things that went on." D.W. stated that she thought that morning was the first time Dela Cruz had her touch him, and that he had never touched her.

A.C. testified that during the incident, D.C. seemed undisturbed by her interaction with Dela Cruz: "[I]t was almost like natural for [D.W.] You know, like I was confused by that, and I think looking back, it's like it seemed like she was kinda like coached, you know, to do that."

D.W.'s daughter testified D.W never used certain sexually explicit language before her dementia diagnosis. However, after her diagnosis, she started to say things about Dela Cruz like, "All he wants to do is fuck me." The daughter sought medical advice about dealing with a dementia patient, and was told to simply agree with D.W. when she made such statements. A.C. testified in accord regarding the medical advice she used when addressing D.W.'s uncharacteristic use of sexually explicit language.

---

[2]    D.W. died in 2021, before Dela Cruz's trial.

B.M. testified that during her first night working as D.W.'s caretaker, D.W. woke up saying, "Please don't touch me.  Leave me.  Leave me alone."  B.M. turned on the lights and asked her what was going on.  D.W. responded, "Oh, thank God it's you.  Please don't let him come back."  D.W. repeated that sentiment to B.M. on other occasions.  Every week, B.M. would hear D.W. say things about Dela Cruz like, "He makes me take my clothes off;" "He makes me grab his dick;" "It's cause his dick is so big;" and, "He just likes to show his body so much.  Why does he do that?"

The defense did not call any witness.

The court denied Dela Cruz's motion for a judgment of acquittal under section 1118.1 brought on grounds Dela Cruz was not D.W.'s caretaker within the meaning of section 288.

## DISCUSSION

### I. *Sufficiency of the Evidence Claim*

Dela Cruz contends insufficient evidence supports his conviction, arguing that "[t]he broad 'constructive touching' doctrine applied in cases involving children should be limited in cases involving an alleged adult victim."  (Italics omitted.)  He maintains the evidence shows he did not touch D.W.; rather, she touched him.  According to Dela Cruz, "evidence of mere encouragement by [him] . . . cannot be sufficient, as a matter of law, to find a 'constructive touching' by him."  (Italics omitted.)

### A. *Applicable Law*

This court's role in reviewing a sufficiency of the evidence claim is limited.  (*People v. Veale* (2008) 160 Cal.App.4th 40, 45.)  We inquire "whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in

4

support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)

Section 288, subdivision (c)(2) provides: "A person who is a caretaker and commits an act described in subdivision (a) upon a dependent person, with the intent described in subdivision (a), is guilty of a public offense and shall be punished[.]"  In turn, subdivision (a) of section 288 provides:  "[A] person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony."  Based on those two subdivisions, one court has set forth these elements of the crime of lewd conduct with a dependent person under section 288, subdivision (c)(2):  "(1) the defendant was a caretaker of a dependent person; (2) the defendant, while serving as a caretaker, willfully committed a lewd or lascivious act on that person; and (3) the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the dependent person." (*People v. Chenelle* (2016) 4 Cal.App.5th 1255, 1264 (*Chenelle*).)

Case law addressing lewd and lascivious conduct has established that the touching required by section 288 may be "a 'constructive touching' by appellant himself." (*People v. Meacham* (1984) 152 Cal.App.3d 142, 153, abrogated on another ground by *People v. Brown* (1994) 8 Cal.4th 746, 756.) That is, "a defendant need not touch the victim in order to violate section 288." (*People v. Lopez* (2010) 185 Cal.App.4th 1220, 1229.)  In a case involving a child victim, a court concluded that the required touching may be done by the child on his or her own person provided it was caused or instigated by a perpetrator having the requisite specific intent.  (*People v.*

*Austin* (1980) 111 Cal.App.3d 110, 114-115; accord, *People v. Mickle* (1991) 54 Cal.3d 140, 176 ["Where committed for a sexually exploitative purpose, [the actual or constructive disrobing of a child by the accused] is presumptively harmful"]; *People v. Roberts* (1972) 26 Cal.App.3d 385, 387-388 [defendant charged as aider and abettor of violation of section 288 need not have physical contact with victim].)

B. *Analysis*

Dela Cruz claims that because D.W. was a dependent adult and not a child under age 14, section 288's "touching element must be read more narrowly." He explains: "As the history of the broad 'constructive touching' doctrine under [section] 288 indicates, its primary aim is to protect children, who may feel compelled to comply with an adult's directions due to their naiveté, smaller size, and particular vulnerabilities. [Citation.] Young children also suffer deep harm merely by being perceived as the object of sexual affections. [Citation.] [¶] Adults, on the other hand—even many or most of those falling under the expansive definition of a 'dependent adult'— do not necessarily suffer from equivalent levels of either vulnerability or risk of harm based on third party perceptions alone."

In *Chenelle, supra,* 4 Cal.App.5th at p. 1264, the court addressed a defendant's similar argument that a distinction should be made between the harm caused to a child and that caused to a dependent adult. The defendant argued that caselaw established there was "a particular ineluctable harm a lewd and lascivious act causes a child under the age of 14," and that children, unlike dependent adults, cannot legally consent to sexual acts with adults. (*Ibid.*) The court rejected that notion: " 'By focusing on the defendant's intent to sexually exploit a child rather than on the nature of the defendant's offending act, section 288 "assumes that young victims suffer profound harm

6

whenever they are perceived and used as objects of sexual desire." '
[Citation.]  The same can be said of lewd act on a dependent adult by a
caretaker under section 288, subdivision (c)(2).  The Legislature has chosen to
locate this criminal act in section 288.  The same intent to sexually exploit
the victim is required for violations of section 288, subdivision (a) and
subdivision (c)(2).  The same type of act—*any* touching of any part of the
person's body, either on the bare skin or through the clothes the person is
wearing—violates both statutes, if done with the requisite intent.  In our
view, the cognate wording of both statutes evinces a legislative determination
that both children under 14 and dependent adults who need caretakers are
particularly vulnerable to sexual exploitation by persons on whom they
depend for care."  (*Chenelle, supra,* 4 Cal.App.5th at p. 1264.)  We agree with
this conclusion, which disposes of Dela Cruz's argument.

Relying on the standard for accomplice liability, Dela Cruz asserts:
"[While D.W.] was a dependent within the meaning of section 288, she was
not 'mentally incapacitated' within the meaning of section 31.[3]"  We reject
Dela Cruz reliance on a standard imported from  section 31 when the
applicable statute, section 288, discussed below, defines a "dependent person"
without using the term "mentally incapacitated."

---

[3]     Section 31 provides:  "All persons concerned in the commission of a
crime, whether it be felony or misdemeanor, and whether they directly
commit the act constituting the offense, or aid and abet in its commission, or,
not being present, have advised and encouraged its commission, and all
persons counseling, advising, or encouraging children under the age of
fourteen years, or persons who are mentally incapacitated, to commit any
crime, or who, by fraud, contrivance, or force, occasion the drunkenness of
another for the purpose of causing him to commit any crime, or who, by
threats, menaces, command, or coercion, compel another to commit any
crime, are principals in any crime so committed."

Dela Cruz argues, "The evidence is, likewise, insufficient to find [he] 'caused' a touching within the legal meaning of the term . . . no more than speculation or guesswork supports a finding that [he] threatened or coerced [D.W.]. To the contrary, [A.C.] expressed shock as she witnessed [D.W.] committing a sexual act in her own home, while not appearing to be either scared or uncomfortable."

But as the California Supreme Court has stated, "There is no language in section 288 requiring that a lewd or lascivious act be committed against the child's will." (*People v. Soto* (2011) 51 Cal.4th 229, 237.) "Lack of consent by the child victim is not an element of either lewd act offense defined in section 288. Nor is willingness by the child a defense to either crime." (*Id*. at p. 238.) In line with the reasoning of the *Chenelle* court stated above that under section 288, the analysis of lewd conduct applicable to child victims also applies to dependent adult victims, we similarly conclude here that consent is no defense to a crime under subdivision (c)(2) of section 288. As set forth in the court's instruction with CALCRIM No. 1060, the jury must find only that defendant willfully caused the touching.

Dela Cruz further claims that the evidence is insufficient to establish that he "proximately caused" D.W. to touch him or that the "natural and probable consequence" of his exposing himself was that D.W. would touch him. With no citation to the record, he asserts, "It simply cannot be said that the 'natural and probable consequence' of [his] exposing himself was that [D.W.] would reach out and touch him."

Dela Cruz overlooks other evidence including B.M.'s testimony that D.W. regularly spoke of Dela Cruz's conversations that included sexual references and A.C.'s testimony that D.W. seemed like she was "coached." Also, Dela Cruz does not elaborate on how the touching here was so remote

8

as to exclude him from causing it, or what independent intervening or superseding cause vitiated his role in causing the touch. We conclude that substantial evidence supported Dela Cruz's conviction, including the fact that during the incident, when Dela Cruz realized he had been caught, he exhibited a consciousness of guilt by running into the bathroom, and he subsequently "shushed" D.W. when she continued to make sexually explicit remarks about his penis in front of A.C. "[I]f the record contains substantial evidence from which a reasonable trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt 'the possibility that the trier of fact might reasonably have reached a different conclusion does not warrant reversal.' " (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 564.)

## II. *Instructional Error*

Dela Cruz alternatively contends the court prejudicially erred by failing to sua sponte instruct the jury with CALCRIM No. 240 on the element of proximate causation.[4] He argues that "because [he] was not alleged to have touched [D.W.]—but, rather, the opposite was being alleged—the question of whether [he] *proximately caused* the touching was squarely at issue." He contends that if the jury were so instructed, it is reasonably probable a juror might have doubted the prosecution's case, especially considering "the evidence indicating that no such touching had ever happened in the past,

---

[4]     CALCRIM No. 240 provides: "An act [or omission] causes (injury/ <insert other description>) if the (injury/ <insert other description>) is the direct, natural, and probable consequence of the act [or omission] and the (injury/ <insert other description>) would not have happened without the act [or omission]. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

9

despite indications that [he] may have exposed himself on one or more prior occasions."

## A. *Background*

After the People's case, defense counsel unsuccessfully moved for a judgment of acquittal on the sole ground that he was not a caretaker within the meaning of section 288: "There has to be evidence that he is a caretaker, that he is an owner, operator, administrator, employee, independent contractor, agent, or volunteer of a public or private facility. And I appreciate you allowing us to argue both sides, but [the prosecutor] hasn't presented any evidence at all that Mr. Dela Cruz is any of these things because there's no evidence of a public or private facility at the time the incident took place. So under section 1118.1, I think that he's entitled to judgment of acquittal."

### 1. *Closing Arguments*

The prosecutor in effect argued to the jury that a touching within the meaning of section 288 includes constructive touching: "What is a lewd and lascivious act? Well, it's any touching with this sexual intent, the intent to arouse either myself, as the perpetrator, or the person that I'm committing the act with. It includes causing someone to touch themselves or someone else. So this is not a situation, obviously, where there's any allegation that the defendant touched or did anything to [D.W.] The criminal act is allowing [D.W.] to put her hand on [Dela Cruz's] penis and move her hand in a sexual act because it was for [Dela Cruz's] sexual gratification."

Defense counsel in closing argument to the jury did not raise any issue as to proximate causation. Instead, he argued that Dela Cruz was not a caretaker within the meaning of section 288. He also argued the People presented no evidence regarding the natural lighting in D.W.'s room at around the time of day when the incident occurred. Defense counsel also attacked the credibility of A.C. and B.M.

## 2. *Jury Instructions*

In discussions outside the jury's presence, the only concern defense counsel raised regarding the applicable CALCRIM No. 1060 jury instruction was that Dela Cruz was not a caretaker within the meaning of section 288. Defense counsel agreed to the court's instruction with this version of CALCRIM No. 1060:

"The defendant is charged in Count 1 with a lewd or lascivious act on a dependent person in violation of [ ] section 288.

"To prove that the defendant is guilty of this crime, the People must prove that:

"One, the defendant was a caretaker of a dependent person;

"Two, the defendant, while serving as a caretaker, willfully committed a lewd or lascivious act on that person; and

"Three, the defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires on himself or the dependent person.

"A lewd or lascivious act is any touching of a person with the intent to sexually arouse the perpetrator or the other person. A lewd or lascivious act includes touching any part of the person's body, either on the bare skin or through the clothes the person is wearing. A lewd or lascivious act includes causing someone to touch his or her own body or someone else's body at the instigation of the perpetrator who has the required intent.

"Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage."

11

### 3. *Verdict Form*

The parties agreed to a verdict form that asked the jury to decide if Dela Cruz was guilty or not "of the crime of lewd act upon a dependent adult by a caretaker, in violation of [section 288, subdivision (c)(2)] as charged in count one of the information by having victim's hand on defendant's penis." (Some capitalization and emphasis omitted.)

### B. *Applicable Law*

" ' "[I]n criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence." ' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)  However, a trial court has a duty to instruct on causation only when causation is at issue.  (*People v. Cervantes* (2001) 26 Cal.4th 860, 866-874; *People v. Bell* (2020) 48 Cal.App.5th 1, 17; *People v. Bernhardt* (1963) 222 Cal.App.2d 567, 590-591.)

Prejudice from instructional error is assessed under *Chapman v. California* (1967) 386 U.S. 18.  (See *People v. Tran* (2022) 13 Cal.5th 1169, 1207.)  " 'In deciding whether a trial court's misinstruction on an element of an offense is prejudicial to the defendant, we ask whether it appears " ' "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " ' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 350.)

### C. *Analysis*

As stated, Dela Cruz did not raise the issue of proximate causation when discussing the jury instructions, in his motion for acquittal, or in closing argument.  Dela Cruz never argued there was a lack of evidence demonstrating that he caused the touching to D.W.  As causation was not at issue, the court did not have a duty to instruct on its own motion with CALCRIM No. 240.  (*People v. Cervantes, supra,* 26 Cal.4th at p. 866.)  The

12

bench notes to CALCRIM No. 240 state that it should only be given if the particular facts of the case raise a causation issue and no other instructions adequately cover the point. We conclude the jury was adequately instructed on the concept of causation with CALCRIM No. 1060, which explained, "A lewd or lascivious act includes causing someone to touch his or her own body or someone else's body at the instigation of the perpetrator who has the required intent."

Further, CALCRIM No. 240 was not appropriate here in light of the doctrine of constructive touching discussed above. Dela Cruz does not elaborate with case law how the proximate causation doctrine applies here. (Compare *People v. Cervantes, supra,* 26 Cal.4th at pp. 871-872.) His theory is not that there was an independent intervening cause of the touching; rather, he implies that there was an altogether different cause of the touching, to wit, D.W., that relieved him of culpability. But this theory is inconsistent with Dela Cruz's acknowledgement that, based on D.W.'s dementia diagnosis, she "was a dependent within the meaning of section 288." That statute defines a "dependent person" as one, "regardless of whether the person lives independently, who has a physical or mental impairment that substantially restricts his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have significantly diminished because of age." (§ 288, subd. (f)(3).) The evidence showed D.W. suffered from dementia; she was uncomfortable with Dela Cruz exposing himself to her; before her dementia and Dela Cruz working with her, she did not use certain sexually explicit language; and, to A.C., it appeared D.W. was coached. In light of that evidence, Dela Cruz has not shown under the *Chapman* standard that the court committed prejudicial

13

error by failing to instruct regarding proximate causation.  We conclude the jury's verdict was not affected by the court's failure to instruct the jury with CALCRIM No. 240.

DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.